DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY,

### MARCH TERM, 1897.

---

JAMES S. ERWIN, PLAINTIFF IN ERROR, v. THE MAYOR, &c., OF JERSEY CITY, DEFENDANTS IN ERROR.

1. When an official person or body has apparent authority to appoint to public office, and apparently exercises such authority, and the person so appointed enters upon such office and performs its duties, his official acts will be valid with respect to the public and to third persons with whom he deals officially, and he will be an officer *de facto*, notwithstanding there was a want of power to appoint in the body or person who professed to do so.

2. Under the provisions of section 19 of "An act for the government of the cities of the state," approved April 6th, 1889 (*Pamph. L., p.* 187), the approval of the mayor is not required to validate an appointment to office by a board.

3. One who becomes a public officer *de facto*, without dishonesty or fraud on his part, and who renders the services required of such public officer, may recover the compensation provided by law for such services during the period of their rendition.

---

On error to the Supreme Court. The facts appear in the opinion.

141

For the plaintiff in error, *Charles L. Corbin.*

For the defendants in error, *William D. Edwards.*

The opinion of the court was delivered by

Magie, Chief Justice. The record returned with this writ disclosed a judgment in favor of the city of Jersey City (which was the defendant below) and against Erwin (who was plaintiff below), upon the verdict of a jury. The bills of exception show that the verdict was directed by the trial judge. Erwin duly excepted to that direction and has assigned error thereon.

The issue in the cause had been previously tried by the same judge without a jury, and his finding was in Erwin's favor. A rule to show cause why that finding should not be set aside was allowed and afterwards made absolute. The opinion of the late Chief Justice (with whom Mr. Justice Garrison concurred), and the dissenting opinion of Mr. Justice Dixon, are reported in 30 *Vroom* 282.

The cause again going down for trial, the issue was submitted to a jury, by consent of both parties, upon the same evidence which had been presented to the trial judge upon the former trial, and on which he had found in Erwin's favor. In conformity with the views expressed in the prevailing opinion of the Supreme Court, a verdict was directed in favor of the city.

The pleadings disclose that Erwin's action was brought to recover the compensation attached to the office of corporation attorney of the city of Jersey City for the period of three months.

At the trial Erwin claimed (1) that he had been duly appointed to that office, and (2) that if not so appointed, he filled the office *de facto* and duly performed its duties for the period for which he claimed compensation.

The prevailing opinion of the Supreme Court indicated two grounds upon which it was concluded that the finding in Erwin's favor, upon the same evidence which is now before us, could not be supported.

In the first place, it was determined that the evidence showed that Erwin had not become corporation attorney *de jure,* because, conceding that the board of finance of Jersey City had power to appoint that officer, one of the members of that board, who acted with it and whose vote was necessary to make a valid appointment, was afterwards adjudged upon *quo warranto* to have been a usurper in office and was ousted therefrom. It was determined that the principle applicable in such a case was that a *de facto* board could not create a *de jure* officer by appointment.

In the second place, it was determined that Erwin, although admitted to have been corporation attorney *de facto* during the period in question, could not recover the compensation attached to the office, because there was, during that period, another corporation attorney *de facto,* and that, under such circumstances, neither *de facto* officer could maintain an action for such compensation.

The situation of the case before us practically compels a review of the decision of the Supreme Court. Passing, for the present, the conclusion of that court first above indicated, I find myself unable to discover, after a careful examination of the evidence, anything to support the conclusion secondly above indicated.

As before stated, the Supreme Court determined that Erwin had become corporation attorney *de facto.* In that conclusion I entirely concur. By the provisions of section 1 of "An act concerning the appointment of municipal officers and boards in cities," approved March 11th, 1893 (*Pamph. L., p.* 224), it was enacted that the law officers of cities of the first class (of which Jersey City is one) should be appointed by the board having charge of the financial affairs by a vote of not less than two-thirds of all the members. In Jersey City, the board pointed out by these provisions as entrusted with the appointing power of law officers was the board of finance, and that board, on December 27th, 1893, while the act was still in force, appointed Erwin corporation attorney for the time limited by law.

It is, however, contended, on the part of the city, that Erwin not only did not acquire by this appointment a title to the office *de jure,* but none *de facto.*

This contention is first put upon the ground that the act under which the board of finance made the appointment was not within the constitutional power of the legislature to enact.

The successful maintenance of this proposition might affect Erwin's title as an officer *de jure,* but, in my judgment, would be without effect upon his position as an officer *de facto,* for at the time the board of finance appointed him corporation attorney, the validity of the act of the legislature had never been judicially questioned. It conferred apparent authority to make such an appointment. It is admitted to be difficult, if not impossible, to express in a single formula what constitutes a public officer *de facto.* The masterly and exhaustive review of the adjudged cases on the subject made by Chief Justice Butler, in his opinion in *State* v. *Carroll,* 38 *Conn.* 449, plainly discloses the difficulty of an exact definition, including all circumstances in which the law, because of public convenience and necessity, treats one as a public officer, although not such, and calls him an officer *de facto.* I deem it unnecessary to prolong this opinion by any account of my own consideration of the subject, for the circumstances of the case before us do not leave it upon any debatable ground. It plainly falls within at least one of the classes defined by Chief Justice Butler, to which the doctrine derived from the cases he reviewed was deemed by him to be applicable. Other cases justifying the same conclusion may be found collected in 5 *Am. & Eng. Encycl. L.* 96. The definition may, I think, be thus stated : When an official person or body has apparent authority to appoint to public office, and apparently exercises such authority, and the person so appointed enters upon and performs the duties of such office, his acts will be held valid in respect to the public, whom he represents, and to third persons, with whom he deals officially, notwithstanding there was a want of power to appoint him in the person or body which professed to do so.

Applying this definition to the facts before us, we find that Erwin unmistakably acquired the position of corporation attorney *de facto*, for the board of finance had apparent authority to appoint to that office and exercised that authority, and Erwin accepted the appointment. It is beyond doubt that his acts on matters in which the corporation attorney could act would bind the city and parties dealing with the city.

It is, however, further contended that the appointment of Erwin by the board of finance gave him no apparent title to the office of corporation attorney, because, as is claimed, that action required the approval of the mayor of Jersey City, which approval, it appears, was refused. This contention is put upon the provisions of section 19 of "An act for the government of cities of this state," approved April 6th, 1889. *Pamph. L., p.* 187. Although this act has been pronounced by this court to be a general law, it is called in the brief of counsel the new charter of Jersey City. Assuming, although there is no proof of it, that the act in question is in force in Jersey City, we will consider the contention thus made.

By the provisions of the section above referred to, the mayor of the city is given authority to veto the "acts" of any board of the city, and it is required that copies of all resolutions and "other matters" shall be furnished to the mayor for consideration, and the board is empowered to pass any vetoed resolution or other matter over the mayor's objections, by a two-thirds vote. It is insisted that a resolution appointing to office is subject to the mayor's veto.

If a literal construction be given to the provisions of the section thus appealed to, it is obvious that the business of any municipal board will not only be hampered and delayed, but practically be rendered impossible to be performed. Resolutions to approve minutes, to lay on the table, to postpone, to adjourn, and numberless others, are resolutions expressing acts of such boards. If all such acts are to be presented to the mayor, and only be effective upon his approval or their passage over his veto, the business of the board could not be

done. It is so incredible that the legislative intent was to produce such a result that a restricted construction of these provisions, consistent with their practical operation, should be adopted if possible.

A question identical with that thus presented was considered by the Supreme Court in *Haight* v. *Love*, 10 *Vroom* 14. By the provisions of a section of a former charter of Jersey City, the mayor was given power to veto the "action" of any municipal board, and all ordinances and resolutions were required to be sent to him for consideration. If any were vetoed, it was provided that the action resolved upon or ordained should be void, unless such board should sustain it by a two-thirds vote at its next meeting. The point presented in the case was whether the appointment, by the board of finance, of a city collector required to be presented to the mayor for his approval. The opinion of the court was delivered by Mr. Justice Dixon, who justly pointed out the impracticability of a literal construction of those provisions, and who concluded that the *actions* which the mayor might approve or veto must belong to the class of acts usually performed by such bodies by resolutions or ordinances, viz., acts of a legislative character. As appointments to office were not of that character and were not usually made by resolution, but rather by ballot or *viva voce*, the legislation then under consideration was construed as inapplicable to acts of such boards appointing to office, and it was held that such acts did not require the approval of the mayor.

With the views expressed in that case I am in entire accord, and I think them applicable to the statutory provisions now under consideration. The absurd result of a literal construction of those provisions tends to induce the belief that such construction was not within the legislative intent, and the fact that it is required that the mayor is to be informed of "resolutions and other matters" for consideration in respect to his approval or veto, justifies the conclusion that the "acts" which are thus to be submitted to him for approval are only such as are usually performed by such bodies by resolutions

or other similar evidences of action. "Other matters" is a phrase not very aptly chosen, but, in my judgment, it can only mean matters of a similar character to resolutions, of which I know none but ordinances. The result is that the power to appoint a corporation attorney, if only apparent, was conferred upon the board of finance, and their appointment did not require the mayor's approval.

While thus concurring in the view of the Supreme Court that Erwin became corporation attorney *de facto*, I am unable to agree with their conclusion that, during the period Erwin was such corporation attorney, there was another corporation attorney *de facto*. In my judgment, the evidence affords no ground for such conclusion.

It appears by the uncontradicted evidence that Spencer Weart had been in the service of the city as corporation attorney. His term had expired in April, 1893, but no successor having been appointed, he was holding over by virtue of his previous appointment. As has been stated, the board of finance appointed Erwin to that office on December 27th, 1893. On December 29th, 1893, Weart sent to Erwin a letter describing the legal business of the city in his hands, and enclosing papers relating to actions against the city then pending. It closed with the following words: "As far as I know, these are all the facts and papers which I can give, relating to the office of corporation attorney of Jersey City, which would be of assistance to a corporation attorney of said city." On December 30th, 1893, Weart sent Erwin another letter, enclosing a summons relating to another pending action against the city. On the same day the city clerk sent Erwin four summonses in actions against the city, which he had received from Weart, whom he described as "formerly corporation attorney."

From these acts it is obvious that Weart, if he had any claim to the office of corporation attorney *de jure* by reason of any defect in Erwin's title, abandoned to Erwin the position *de facto*. The evidence is clear that Erwin assumed the position and performed its duties.

But it is argued that Weart afterward became corporation attorney *de facto,* and such was the conclusion of the Supreme Court.  This contention is put upon the following facts: On January 9th, 1894, the mayor of the city notified Weart by letter that he had received a resolution of the board of finance purporting to appoint a corporation attorney, which he had not yet approved, and requesting Weart to continue to act as corporation attorney for a time.  To this letter Weart replied by letter containing the following: "I do not want to take up the work of the office of corporation attorney, and if I do so it will be a secondary matter to my own matters, as I intend to command my own time and give the first attention to my own affairs."

From these acts it is obvious that the mayor, being of opinion that his approval was essential to Erwin's appointment, was desirous that Weart should continue to act as if Erwin's title had not been perfected.  He made no pretence of any power to appoint Weart to that office.  On the other hand, it is equally obvious that Weart did not recognize any claim to exercise the office as corporation attorney *de jure.* He had, in fact, laid down the work, and he justly characterizes his action when he discloses his reluctance to "take it up."  Under these circumstances he did not acquire the position of an officer *de facto* by doing some work for the city. He had no new appointment to the office, and his work, which consisted in the approval of a few contracts, must be considered as the work of a mere volunteer.

As the uncontradicted evidence established the fact that Erwin rendered services to the city as corporation attorney *de facto* for the period named in the declaration, and that no other person was acting in that office, it only remains to determine whether Erwin can recover from the city the compensation attached to the office for that period.

The right of a *de facto* public officer who has accepted the position and performed its duties, to the emoluments of the office, has been carefully considered in our courts, and conclusions have been reached which, although somewhat at

variance with those of the courts of other states, I deem it .to be in the highest degree reasonable. In *Stuhr* v. *Curran,* 15 *Vroom* 181, this court had the matter under consideration. That was an action by a *de jure* officer, who had, by *quo warranto,* ousted from his office an intruder, who had, during his intrusion, performed the official duties and received the salary attached to the office, to recover from the *de facto* officer the salary thus received. The prevailing opinion of Mr. Justice Van Syckel contains an accurate review of the cases on the subject and convincingly shows that no authority precluded the adoption of rules respecting it, consonant with reason and public policy. It was declared that, in this country, public office was not property, and public officers had no proprietary interest in their offices, and it was deduced therefrom that the right to the emoluments of the office arose, not out of the title to the office, but out of the actual rendition of services for which such emoluments were designed to be compensatory. It was carefully pointed out that, upon grounds of public policy, a limitation to the doctrine stated must be applied so that one who obtained office dishonestly and fraudulently could not demand the emoluments of the office. The result was that a majority of the court held that the intruder into office, who had become such under a certificate of election regular on its face and without fraud on his part, could retain the salary he had received while he performed the duties of the office, as against him who had, during the performance of such services, the *de jure* title to the office.

The Supreme Court afterward decided that one who had intruded into public office by force and fraud could not recover from the public the salary attached to the office, although he had performed the duties devolving upon the officer. *Meehan* v. *Freeholders, &c.,* 17 *Vroom* 276. This result I deem to be in entire accord with the doctrine of Stuhr *v.* Curran.

That doctrine, applied to the case before us, requires us to hold that one who becomes a public officer *de facto* without

dishonesty or fraud, and who has performed the duties of the office, may recover such compensation for those services, as is fixed by law, from the municipality which is by law to pay such compensation.

In the case before us there is no pretence that Erwin dishonestly or fraudulently intruded into the office of corporation attorney. He took possession of the office when surrendered to him by the previous incumbent. He performed its duties. It follows that he is entitled to the compensation.

For these reasons the direction to the jury to find a verdict for the city was erroneous.

This result renders it unnecessary to determine whether or not the appointment of Erwin by a board, one of the members of which was only a member *de facto,* and afterwards adjudged to be a usurper, constituted Erwin corporation attorney *de jure,* and no opinion is intended to be expressed on that point.

The judgment below must, therefore, be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, DEPUE, DIXON, LUDLOW, VAN SYCKEL, BOGERT, DAYTON, HENDRICKSON, NIXON. 9.