## PETERSON v. BENSON, City Recorder.

No. 2146. Decided December 1, 1910 (112 Pac. 801).

1. OFFICERS—OFFICER DE FACTO. Comp. Laws 1907, sec. 213, provided for the election of a city marshal in cities of less than a certain population, but was amended by Laws 1909, c. 107, so as to require the appointment of a marshal by the mayor. *Held,* that where a marshal, elected under section 213, continued to hold office after the expiration of his term, no appointment having been made by the mayor, he was a *de facto* officer. (Page 291.)

2. MNICIPAL CORPORATIONS—OFFICERS—COMPENSATIONS. Comp. Laws 1907, sec. 213, provided for the election of a city marshal in

cities of less than certain population; but was amended by
Laws 1909, c. 107, so as to require the appointment of a marshal
by the mayor. Comp. Laws 1907, sec. 225, provide that the
compensation of an officer shall not be increased or diminished
to take effect during the time for which such officer was elected
or appointed. One elected a marshal for the term of two years
took office January 6, 1908, and continued to serve after the
expiration of his term; no appointment having been made by
the mayor. In October, 1909, an ordinance of the city increased
the compensation of marshal for the term beginning 1910.
*Held*, that for service after the expiration of the term for
which he was elected the marshal was entitled to the increased
compensation; he being a *de facto* officer, and not a "holdover"
as the term is used, as applied to one holding a public office.
(Page 293.)

3. OFFICERS—COMPENSATION—DE FACTO OFFICER. An actual incumbent of a public office who is an officer *de facto* is entitled to
the compensation attached to the office, there being no adverse
contestant or *de jure* officer. (Page 293.)

APPEAL from District Court, First District; *Hon. W. W. Maughan,* Judge.

Application by Niels Peterson for a writ of mandate requiring Mae Benson, as Recorder of Logan City, to draw a warrant in favor of applicant.

Judgment dismissing petition. Applicant appeals.

REVERSED.

### STATEMENT OF FACTS.

Niels C. Peterson, appellant, applied to the district court of Cache County for a writ of mandate requiring the recorder of Logan City to draw a warrant in his favor upon the treasurer of said city for the sum of eighty-three dollars and thirty-three and one-third cents alleged to be due him for salary earned as marshal of Logan City during the month of February, 1910. An alternative writ of mandate was issued by the court. The recorder filed an answer to Peterson's petition and the cause was submitted to the court

for decision upon an agreed statement of facts, from which it appears that Peterson was duly elected to the office of marshal of Logan City on November 3, 1907, and that he duly qualified as marshal and entered upon the duties of the office January 6, 1908, and ever since has continued to and did during the month of February, 1910, perform the duties of the office.

Section 213, Comp. Laws 1907, provides, as far as material here, that: "In addition to the mayor and city councilmen, there shall be elected . . . in cities of less than twelve thousand inhabitants, a city marshal; *provided,* that in cities of less than twelve thousand inhabitants the city recorder shall be *ex officio* city auditor and shall perform the duties of such office. . . . All elective officers shall hold their respective offices for two years, and until their successors are elected and qualified."

Section 225 provides that: "All officers of any city shall receive such compensation as may be fixed by ordinance, but the compensation of any such officer shall not be increased or diminished to take effect during the time for which any such officer was elected or appointed."

In the year 1909 the legislature amended section 213 (Laws 1909, c. 107). The section as amended, so far as material to the questions here involved, provides that: "In cities of less than twelve thousand inhabitants a city marshal shall be appointed by the mayor subject to the confirmation of the city council on the first Monday in January folloging a municipal election."

It appears from the statement of facts that Logan City is a city of the second class having a population of less than twelve thousand inhabitants; that the mayor of said city has failed and neglected to appoint a marshal for the city by and with the concurrence of the city council or otherwise; that Peterson has not been duly or otherwise appointed to the office of marshall of the city in the year 1910; that he is exercising and performing the duties of the office of city marshal, and claiming the benefits, emoluments, and salary of the office by virtue of his election thereto in the year

1907, and that he has no right or claim to the office, except such as arises out of his election to the same in the year 1907. It further appears that at the time Peterson was elected, and at the time he entered upon the duties of the office mentioned, there was in force and effect an ordinance of Logan City fixing the salary of the office of city marshal at nine hundred dollars per annum, payable at the end of each month in equal installments of seventy-five dollars; that subsequently, on October 1, 1909, there was duly passed by the city council, and approved by the mayor of Logan City "an ordinance purporting to fix the annual salary attached to the office of marshal of Logan City for the terms of two years beginning the first Monday in January, 1910, and ending the first Monday in January, 1912, at one thousand dollars per annum," payable in monthly installments of eighty-three dollars, thirty-three and one-third cents at the end of each month.

It is further stipulated that "the above-named defendant, Mae Benson, ever since January 3, 1910, has been, and now is, the duly elected, qualified, and acting city recorder of Logan City, and as such officer it was, and now is, the duty of such recorder to draw all warrants or orders for the payment of all funds due from said city to its officers on account of salary or otherwise payable out of the treasury of Logan City; that petitioner duly demanded that the defendant draw a warrant in his favor upon the treasurer of Logan City for the sum of eighty-three dollars and thirty-three and one-third cents in payment of his salary as marshal earned in the month of February, 1910; . . . that the recorder refused and still refuses to draw a warrant for said sum or any sum except said amount of seventy-five dollars; . . . that the recorder tendered to the petitioner a warrant drawn on the treasurer of Logan City for the sum of seventy-five dollars," which Peterson, the petitioner, refused to accept; that defendant deposited with the clerk of the district court of Cache County at the time she filed her answer said warrant for seventy-five dollars for the use and

benefit of Peterson; and that defendant has at all times been ready, willing, and able to issue and deliver to Peterson a warrant for seventy-five dollars. It was also stipulated that "the petitioner has no plain, speedy, or adequate remedy at law."

The court found on the issues in favor of the recorder, and rendered judgment dismissing the petition for a writ of mandate. To reverse the judgment, Peterson has brought the case to this court on appeal.

*A. A. Law* for appellant.

*H. G. Nebeker* and *Charles H. Hart* for respondent.

McCARTY, J. (after stating the facts as above).

Respondent contends, first, that the period of time elapsing from January 3, 1910, the date upon which the officers of Logan City elected in 1909 were installed in office, until March 1, 1910, was a part and a continuation of the term of office to which appellant was elected in November, 1907, and that the tenure of his office and the emoluments thereof were as fixed by law at the time he qualified and entered upon the duties of the office, January 6, 1908; and, second, "that so much of the ordinance passed October 1, 1909 (mentioned in the foregoing statement of the case), as purported to increase the salary of said marshal to take effect January 3, 1910, is void as to appellant, for the reason that it would increase the salary of said marshal 'to take effect during the time for which such officer was elected' and would be in conflict with section 225 of the Compiled Laws of the State of Utah, 1907."

The authorities seem to hold that when a person is elected or appointed to an office and he qualifies and enters upon the duties thereof under a statute which provides that the person so elected or appointed shall hold the office for a definite period of time and until his successor is elected and qualified, and such person holds over and continues to discharge the duties of the office after the expiration of his

regular term because of the failure to elect or appoint a successor, the hold-over period is a part of the time for which such officer was elected or appointed. In this case, however, the law under which appellant was elected, and under which he held the office from January 6, 1908, until the first Monday in January, 1910, was, in the year 1909, amended and the office changed from an elective to an appointive office. The amendment, so far as it affects the officer in question, went into effect immediately on the expiration of the term (two years) for which appellant was elected. Chapter 107, p. 230, Sess. Laws Utah 1909. As appellant was not appointed to the office after his term expired, and the law under which he had been elected having been, in effect, repealed, it follows that during the month of February, 1910, he was not a *de jure* officer, and was in no sense a holdover, as the term "holdover" is understood when applied to a person holding a public office. (*State v. Simon*, 20 Or. 365, 26 Pac. 170.) It does appear, however, that he was a *de facto* officer, and as such discharged all the duties of the office during the month of February, 1910. The important question therefore is, Can an actual incumbent of a public office, who is only an officer *de facto* and in no sense a *de jure* officer, maintain an action for the salary, fees, or other compensation attached to the office, there being no adverse contestant or *de jure* officer?

There are many American decisions in which the view derived from England is still adhered to, namely, that the right to the emoluments of a public office is an incident to and rests upon the title to the office; and hence under no circumstances is a *de facto* officer legally entitled to the emoluments of the office, although he may have performed all the services and discharged all the duties of the office. Upon the other hand, there are courts of high standing which hold that in this country a public office is in no sense property, and that public officers have no proprietary interest in their offices. Pursuant to these latter views such courts have deduced the doctrine that the right to the emoluments

of an office arises out of the actual rendition of the services required to be performed by the officer; that is, the emoluments are designed to be merely compensatory. (*Stuher v. Curran,* 44 N. J. Law, 184, 43 Am. Rep. 353; *Erwin v. Jersey City,* 60 N. J. Law 141, 37 Atl. 732, 64 Am. St. Rep. 584.) In view of the foregoing, some of the courts have adopted and followed the intermediate course, namely, that as between an officer *de facto* and a *de jure* officer the latter is entitled to whatever salary and other compensation may be atteched to the office, even though the *de facto* officer may have performed all the duties of the office. This doctrine is based upon the theory that unless the *de jure* officer is protected, dishonest intruders will lay claim to the office, and, obtaining possession thereof, will claim the emoluments to the detriment of the public and the injury of the *de jure* officer. In cases, however, where there is no *de jure* officer, the line of decisions last mentioned hold that a *de facto* officer who, in good faith, has had possession of the office and has discharged the duties pertaining thereto, is legally entitled to the emoluments of the office and may, in an appropriate action, recover the salary, fees, and other compensation attached to the office. This doctrine is discussed and illustrated in the following cases: *Erwin v. Jersey City, supra; Dickerson v. City of Butler,* 27 Mo. App. 9; *Behan v. Board, etc.,* 3 Ariz. 399, 31 Pac. 521; *Adams v. Directors, etc.* [Ariz.], 40 Pac. 18.

Constantinian, in his treatise on the *De Facto* Doctrine, section 238, says: "Certain courts, while denying to the *de facto* officer the right to recover salary when there is a *de jure* officer entitled to the office, have thought that the rule should be different when there is no such officer in existence. This doctrine may undoubtedly be supported on equitable grounds, since it seems unjust that the public should benefit by the services of an officer *de facto,* and then be freed from all liability to pay any one for such services." The author cites with approval the Arizona cases above mentioned.

We think the rule as declared by these authorities is more in consonance with the principles of equity than the opposite rule which holds that an officer *de facto* cannot, under any circumstances, maintain an action for the salary, fees, or other compensation attached to the office which he holds.

The judgment is reversed, with directions to the trial court to issue a writ of mandate as prayed for in appellant's complaint. Appellant to recover costs.

STRAUP, C. J., and FRICK, J., concur.