**NAYLOR v. CARTER, State Auditor.**

No. 24935.   Dec. 12, 1933.

Rehearing Denied Jan. 9, 1934.

Lester & Briggs, for plaintiff.

J. Berry King, Atty. Gen., and Robert D. Crowe, Asst. Atty. Gen., for defendant.

SWINDALL, J.  On August 12, 1933, the plaintiff made application and was granted permission by this court to file an original action in mandamus against Frank C. Carter, State Auditor, for his salary and certain expenses incurred by him in performing his duties as chief inspector of the State Market Commission, the Market Commission being established as a department in the State Board of Agriculture by chapter 32, Regular Session of the Legislature in 1933.

The plaintiff, among other things, alleges that he is a resident and legal voter of the state of Oklahoma, and that on the 12th day of May, 1933, the State Board of Agriculture of the state of Oklahoma, in regular session, duly elected and employed said plaintiff as chief inspector of the State Market Commission, and that on said date he duly qualified as such inspector and has ever since been and is now the duly qualified and acting chief inspector of the State Market Commisson of Oklahoma. He further alleges that the Board of Agriculture of Oklahoma in lawful session duly approved his claim for services as said officer for a portion of the month of May, 1933, in the sum of $96.80, which amount was a true and correct amount due plaintiff for said services during said period of time in May, 1933. and that said board duly approved the claim of plaintiff for the month of June, 1933, in the sum of $150, and that the plaintiff expended in actual and necessary expenses in traveling and while engaged in his official duties as chief inspector of the Market Commission

the sum of $70.35, and that said sum was advanced and paid from the personal funds of plaintiff, and he attaches an itemized statement of said expenses to his petition as a part thereof, and alleges that he has in his possession the actual and original receipts signed by each person to whom he paid said expense items. He makes like claim for compensation for the month of July and expenses for that month. He further states that he has duly presented said claims to Honorable Frank C. Carter, State Auditor, and said claims were disallowed by said Auditor upon the ground that such claims cannot be paid until requirements are met with as set out in section 7 of chapter 32, commonly referred to as Senate Bill No. 181, as per opinion of the Attorney General. Plaintiff further alleges that he is qualified to inspect the principal market products required to be inspected under said law, and that there are certain technical requirements in said act that cannot be complied with, which we shall refer to later in this opinion.

Upon the filing and presentation of said petition to this court, an alternative writ of mandamus was issued, and the defendant has filed his return, in which he alleges, among other things, that at the Regular Session of the Fourteenth Legislature, the chapter above mentioned was passed, and by the provisions of section 2 thereof created the State Market Commission to be composed of the president and members of the State Board of Agriculture. Section 7 of said bill creates the office of chief inspector at an annual salary of $1,800. Said section further provides:

"The chief inspector of the State Market Commission, department of the State Board of Agriculture, must be qualified as such inspector by holding licenses from the United States Department of Agriculture to inspect all fruits, vegetables and hay, and shall qualify to inspect any other farm product upon which inspection service is made available, as provided by this act, and required by the laws of the state of Oklahoma. * * *"

Said defendant further states that the State Market Commission, on the 12th day of May, 1933, purported to appoint H. N. Naylor, plaintiff, to the position of chief inspector, but that said H. N. Naylor was ineligible for such appointment and was not qualified as such inspector by holding licenses from the United States Department of Agriculture to inspect fruits, vegetables, and hay, nor was he qualified to inspect other farm products upon which inspection

service is made available; that said plaintiff was not then and has never since been eligible to be appointed nor qualified to serve as chief inspector; that plaintiff was therefore a usurper of the office of chief inspector and does not have legal title to said office. That the compensation of an officer in the state of Oklahoma is incidental to and attaches to the legal title to said office, and the mere fact that he is in possession of the office and performing the duties thereof does not entitle him to the compensation attaching to the title to the office.

For further answer to the petition, defendant denies that plaintiff is the duly qualified chief inspector of the State Market Commission, and that he is a de jure officer.

Defendant denies that it is impossible for any one in the state of Oklahoma to meet the requirements in section 7 of Senate Bill No. 181 of the Fourteenth Legislature by holding licenses from the United States Department of Agriculture to inspect fruits, vegetables, and hay, and said defendant denies that it is impossible to comply with the various provisions of said Senate Bill No. 181, relative to the qualifications of the chief inspector of the Market Commission.

Upon the issue thus joined, on order of this court, testimony was taken before the referee of this court, and filed in the office of the clerk. The case has been orally argued and submitted on briefs.

Section 2 of chapter 32, being the act under consideration, provides that:

"There is hereby created a State Market Commission as a Department of the State Board of Agriculture of Oklahoma, composed of the president and members of the State Board of Agriculture, and the State Market Commission hereby created shall perform all of the duties heretofore performed by the State Market Commission. The State Board of Agriculture shall appoint a chief inspector for said State Market Commission, who shall be general supervisor of all work of said Commission. He shall also perform field work and possess the qualifications hereafter provided."

That portion of section 7 applicable to the chief inspector of the State Market Commission provides that:

"The chief inspector of the State Market Commission Department of the State Board of Agriculture, must be qualified as such inspector by holding licenses from the United States Department of Agriculture to inspect all fruits, vegetables, and hay,

and shall qualify to inspect any other farm product upon which inspection service is made available, as provided by this act and required by the laws of the state of Oklahoma. The following positions are created in the State Market Commission, department of the State Board of Agriculture, at the following salaries:

"One chief inspector, at a salary of per annum $1,800. * * *"

Section 8 provides that:

"All employees of the State Market Commission shall be required to pass an examination prescribed by the State Board of Agriculture to determine the qualifications of the applicants to perform the specific duties of the position to which he may be appointed. Such examinations shall be prescribed jointly by the State Market Commission and the United States Department of Agriculture. The papers evidencing the examination of such applicants shall be filed in the office of the State Market Commission as part of the public records of said office. Vacancies in said State Market Commission shall be filled by selecting qualified persons in the order of their respective qualifications as disclosed by the examinations on file in said department. The chief inspector and the field agency shall be subject to removal for cause only, and upon request of any employee he shall be given a public hearing by the State Board of Agriculture."

It is contended by the plaintiff that it is impossible for him or any other person to comply with that portion of section 8 which provides that "Such examinations shall be prescribed jointly by the State Market Commission and the United States Department of Agriculture," for the reason that the United States Department of Agriculture will not conduct such joint examination. This contention of the plaintiff was sustained by the evidence taken by the referee.

The plaintiff further contends that the United States Department of Agriculture only issues annual certificates or inspector's licenses, and that the same are only issued after the inspector has demonstrated to a representative of the United States Department of Agriculture an ability to inspect the particular kind of product for which the license is issued to him to inspect, and the licenses expire June 30th in the year after they are issued.

Products which plaintiff had been called upon to inspect and had been licensed to inspect at the time he filed his amended petition were Irish potatoes, corn, onions, cabbages, and grapes. Upon the day of oral argument he requested and was granted leave to file a copy of his license to inspect and certify the class, quality, and condition of hay and straw. The plaintiff has qualified and obtained licenses to inspect six · of the leading · commercial products of Oklahoma and the products covered by these licenses represent 90 per cent. of the fruit, hay, and vegetables upon which an inspection is requested or has been required from January 1, 1932, to August 1, 1933. There is no doubt as to the plaintiff's qualifications to act as general supervisor of all work of said Commission except as to certain products which he does not have licenses to inspect. He had secured licenses from the United States Department of Agriculture to inspect all products he had been called upon to inspect, and stated that he was qualified to inspect other products, but could not secure a license to inspect same until after he had demonstrated to a representative of the United States Department of Agriculture his ability to make such inspection by making an inspection in the presence of such representative, and that as to certain products he has not had such opportunity.

There is some question raised in the briefs relative to the position of plaintiff as to being an officer or employee, but owing to the fact that his · salary is fixed for a definite period of time and he is subject to removal for cause only, we do not think there is any doubt that he is an officer, and the only question is whether or not his qualifications were such as to constitute him a de jure officer or whether he was a de facto officer.

Under the view we take of the case, we do not think that in an action of this nature it is material whether he was a de jure or de facto officer. The Supreme Court of Utah, in the case of Peterson v. Benson, 112 P. 801, in the third paragraph of the syllabus, held that:

"An actual incumbent of a public office who is an officer de facto is entitled to the compensation attached to the office, there being no adverse contestant or de jure officer."

In the case of Erwin v. City of Jersey City (N. J.) 37 Atl. 732, in the first and third syllabus paragraph, the court held:

"1. When an official person or body has apparent authority to appoint to public office, and apparently exercises such authority, and the person so appointed enters upon such office, and performs its duties, his official acts will be valid with respect to the public and to third persons with whom

he deals officially, and he will be an officer de facto, notwithstanding there was a want of power to appoint in the body or person who professed to do so. * * *

"3. One who becomes a public officer de facto, without dishonesty or fraud on his part, and who renders the services required of such public officer, may recover the compensation provided by law for such services during the period of their rendition."

In the case of Cousins v. City of Manchester, 38 Atl. 724, the Supreme Court of New Hampshire held that:

"A city fireman is not disentitled to compensation for services rendered because of defect in the manner of his appointment, in the absence of objection to his services by the city, and of any other rightful claimant."

In the case at bar there is no question as to the authority of the State Board of Agriculture to appoint the plaintiff, the only contention being that he does not possess the qualifications to constitute him a de jure officer, and that in order to recover his salary plaintiff must show he is a de jure officer. There are cases holding that in an action by an officer to compel the payment of his salary he must show a de jure title to the office, but we are of the opinion, and hold, that the sounder rule is announced by the Court of Appeals of New Jersey, that where the officer de facto, without dishonesty or fraud on his part and in good faith, performed the duties pertaining to his office and possesses the principal qualifications to constitute him a de jure officer, and in the absence of a de jure claimant, may enforce payment by the public of the compensation to which an incumbent of the office is entitled.

We think, under the facts disclosed by the record, that the plaintiff has in good faith performed the duties pertaining to the office, and may, in the absence of a de jure claimant, enforce payment by the public of the compensation to which he is entitled.

The peremptory writ of mandamus is granted.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur. BUSBY, J., absent.