**CHILDERS, State Auditor, v. PAUL.**

No. 26399. March 24, 1936.

Rehearing Denied May 19, 1936.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for plaintiff in error.

Haskell Paul, for defendant in error.

PER CURIAM. This action was instituted in the district court of Oklahoma county by Haskell Paul, as plaintiff, against C. C. Childers, State Auditor of the state of Oklahoma, as defendant, for a peremptory writ of mandamus requiring said defendant to audit and allow a salary claim of the plaintiff. The district court rendered judgment in favor of the plaintiff, and defendant appeals. The parties will hereinafter be referred to as they appear in the trial court.

The cause was submitted to the trial court upon the pleadings and agreed statement of facts. Therefore, as pointed out by Mr. Justice Riley in his specially concurring opinion in the case of Wentz v. Thomas, 159 Okla. 124, 15 P. (2d) 65 (loc. cit. p. 135):

"The agreed statement of facts 'is equivalent to a request by both parties for a directed verdict, and constitutes an admission that only questions of law are involved and that there is no disputed or controverted question of fact in the case.' 38 Cyc. 1935; Goodwin v. Kraft, 23 Okla. 329, 101 P. 856; Anderson v. Keystone Sup. Co., 93 Okla. 224, 220 P. 605; McGaffey v. Mulky, 115 Okla. 44.

241 P. 480; Cons. Steel & Wire Co. v. Burnham, Hanna, Munger & Co., 8 Okla. 514, 58 P. 654; First Nat. Bank v. Worley, 100 Okla. 254, 229 P. 234."

It was stipulated by the parties that the following were the facts:

"1. That plaintiff was appointed to the position of 'law and executive clerk' of the Commissioners of the Land Office by said commissioners on May 16, 1933, and entered upon his duties as such on or about May 29, 1933; that said appointment as law and executive clerk is the only one he has ever received.

"2. That the copy of the minutes of the meeting of the Commissioners of the Land Office of April 17, 1935, which copy is attached hereto as exhibit 'A', is a true and correct copy of the minutes of said meeting in so far as same refers to plaintiff or to the issues involved in this case, and correctly sets forth and records the matters and files referred to and quoted therein. That no meeting of the Commissioners of the Land Office was held after said meeting and prior to May 1, 1935, on which date Orlando F. Sweet was appointed 'law and executive clerk.'

"3. That it is the duty of said law and executive clerk to act as the legal adviser of the Commissioners of the Land Office and the several departments and officers thereof, and to represent them as their attorney, either alone or in conjunction with the Attorney General, in all actions brought by or against said commissioners, departments and officers.

"4. That after the adoption of the resolution set forth in exhibit 'A' of this stipulation, and up to and including April 30, 1935, plaintiff continued to occupy the office room or space in the State Capitol Building theretofore and now used as the office of the law and executive clerk of the Commissioners of the Land Office; that same was so occupied by plaintiff without any action being taken by said commission either assenting or dissenting thereto; that during said period no services were rendered by plaintiff at the request of the Commissioners of the Land Office, but at the request of the Secretary to said Commissioners said plaintiff continued to occupy said office during said period and to perform duties such as are referred to in paragraph three of this stipulation."

By exhibit "A" attached to the above stipulation it was further agreed that the plaintiff had filed his resignation with the Commissioners of the Land Office to be effective May 1, 1935, but at a regular meeting of the commissioners held on April 17, 1935, this resignation was rejected and the plaintiff discharged, effective that date, by the Commissioners of the Land Office.

From the above agreed statement it will be observed that the plaintiff bases his claim for salary for the period involved in controversy by virtue of a request made to him by the Secretary to the Commissioners of the Land Office; and that if he had any employment or any right to the salary attached to said position during said time, it is solely by virtue of the act of the Secretary to the Commissioners of the Land Office and not otherwise; Therefore, the controversy resolves itself into a question of whether the Secretary to the Commissioners of the Land Office had either any real or apparent authority to employ the plaintiff during the 13 days in which he remained in his former position. If the secretary had actual authority to make the appointment, then the plaintiff's tenure during the time was de jure and he was entitled to his salary as a matter of course. On the other hand, if the secretary was lacking in actual authority to make such appointment but had apparent authority to do so, then plaintiff would be entitled to the salary of such position as a de facto occupant thereof in the absence of a de jure claimant, and would likewise be entitled to the salary incident to the position. Naylor v. Carter, 167 Okla. 125, 27 P. (2d) 843; Franks v. Ponca City, 170 Okla. 134, 38 P. (2d) 912. If, on the other hand, said secretary had neither actual nor apparent authority to fill said position, then upon plaintiff's discharge by the Commissioners of the Land Office he was divested of any claim to the position and had no right to claim salary thereafter. Orahood v. City and County of Denver, 41 Colo. 172, 91 P. 1116.

In arriving at a correct conclusion in the matter it is necessary to briefly review the statutes creating and relating to the position of law and executive clerk to the Commissioners of the Land Office. We find said position was created, along with other positions in various state departments, by House Bill No. 315 of the Seventh Legislature, the same being chapter 211, of Session Laws 1919, the pertinent portion thereof reading as follows:

"Section 1. That the following clerical, stenographic and other positions are hereby created, and the amounts set opposite each are hereby fixed as the annual salary for the same, which shall be paid out of funds appropriated therefor, monthly, upon warrants issued by the State Auditor; * * * Commissioners of the Land Office * * * One Law and Executive Clerk, $2,750. * * *

"Section 2. That the heads of the departments except as otherwise herein provided are hereby authorized and empowered to appoint persons to hold positions created in their respective departments. The persons so appointed shall hold office at the will of such state officer and in the case of all boards and commissioners, such board or commission shall, by vote thereof, except as otherwise herein provided, appoint persons to hold positions created under such boards or commissions by this act, and the said persons so appointed shall hold office at the will of such officer, boards or commissions making said appointment, provided that any board or commission may authorize the secretary of such board or commission to make said appointment."

It will be observed that when the position of law and executive clerk was created the appointing power was placed in the Commissioners of the Land Office, but that they were given the right to delegate such authority to the secretary of the commission should they so see fit. The above-cited provisions of the statute appear as section 111, C. O. S. 1921, and paragraph Z-4 thereunder, reading: "Commissioners of the Land Office * * * one Law and Executive Clerk $2,750." was amended in immaterial respects by section 1, chap. 50, Session Laws 1923-24, and this in turn by section 1, chap. 268, Session Laws 1929, and now appears in this form as section 3499, O. S. 1931. By this latter amendment the salary of the law and executive clerk was increased to $3,600 per year and the position of an assistant law and executive clerk was created, and the appointments of two title examiners and two assistant title examiners were authorized. However, this amendment made no change relative to the appointment of persons to these positions. Thus, as the law then stood, the Commissioners of the Land Office were authorized to appoint two law and executive clerks and four title examiners. The Fourteenth Legislature in regular session, by section 13, chap. 91, Session Laws 1933 directed the Commissioners of the Land Office in the following manner:

"Section 13. The Land Office shall be administered under the supervision of the Commissioners of the Land Office by the Secretary of the Commission who shall be appointed by the Governor subject to approval by a majority of the commission.

"By and with the consent and approval of a majority of the commissioners, the secretary shall select such employees as may be deemed necessary properly to operate the Land Office under the rules and regulations herein provided, and shall fix the salaries, or compensations of said employees of the commission subject to the approval of the commission by a majority vote in accordance

with the nature of the employment; the qualifications required and responsibilities to be assumed by each of said employers; provided that the total salaries to be paid shall not exceed an average of six thousand ($6,-000) dollars per month in any one year, by inserting an itemized list of all of the employees with the salary of each set out: And provided further that the Commissioners of the Land Office shall appoint the attorneys and not exceeding seven (7) appraisers to make appraisements for loans provided herein and assist in the collection of loans and interest thereon and the rentals from agricultural and grazing lands belonging to the department and such other duties as may be assigned to them by the Secretary of the Commission who shall direct in each case their service."

Before this became effective the same Legislature in special session amended the above-quoted statute by section 2 of chapter 184, Extra Session Laws 1933, to read as follows:

"Section 2. That section 13 of said House Bill No. 187, be amended to read as follows:

"'Section 13. The Land Office shall be administered under the supervision of the Commissioners of the Land Office, by the Secretary of the Commission, who shall be appointed by the Governor.

"'Providing that the Governor of the state of Oklahoma, shall be designated as chairman ex officio, and the commissioners shall elect from their body a vice-chairman whose duty it shall be to act as chairman in the absence of the chairman or in case of his failure, neglect, or refusal to act as chairman.

"'The secretary shall select such employees as may be deemed necessary properly to operate the Land Office under the terms of this act, except the attorneys and appraisers, who shall be selected by a majority of the commissioners; provided, further, that the Commissioners of the Land office shall appoint not exceeding seven (7) appraisers to make appraisements for loans provided herein, and assist in the collection of loans and interest thereon, and the rents from agricultural and grazing lands belonging to the department and such other duties as may be assigned to them by the Secretary of the Commission, who shall direct in each case their services; provided, further, that the Commissioners of the Land Office shall appoint one title examiner and not more than two assistant title examiners to attend to any legal matters which the School Land Commission is charged to administer and enforce, and such other duties as may be assigned to them by the Secretary of the Commission, who shall direct in each case their services.

"'The employees of the Land Office whose duties require them to handle funds, or securities, of the department, shall be required to give bond in an amount sufficient to protect the department against loss by reason of their negligence or willful misappropriation of such funds and securities.

"'The commissioners, by a majority vote, may remove the Secretary or any appraiser, or any attorney, of the Land Office, and the Secretary may discharge and remove any employee selected by him.'."

It will be noted that the above-quoted enactment by the Legislature vested in the Secretary of the Commissioners of the Land Office the power to appoint all employees except attorneys and appraisers, and the controversy here largely involves an interpretation of the extent of this reservation plaintiff earnestly contending that the proviso which is set forth in section 2, chap. 184, supra, limits the previous exceptions so as to make the same refer only to the title examiners immediately referred to and not to the attorneys who might be employed by the Commissioners of the Land Office. If the language appearing in the act is to be given a strict grammatical construction, then there would be some merit in this contention, but as we have pointed out in the Protest of C., R. I. & P. Ry. Co., 137 Okla. 186, 279 P. 319:

"It is the cardinal rule that in the construction of statutes the legislative intent must govern, and to arrive at the legislative intent the entire act must be considered, together with all other enactments upon the same subject, and when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied to give the statute the force and effect which the Legislature intended."

See, also, in this connection, Maben v. Rosser, 24 Okla. 588, 103 P. 674; Hudson v. Hopkins, 75 Okla. 260, 183 P. 507; Brown v. Miller, 89 Okla. 287, 215 P. 748.

With the general rules of statutory construction announced in the above cases as a guide, we think that it is clear from a review of the legislative enactments upon the subject, beginning with chapter 211, S. L. 1919, and concluding with chapter 184, Extra Session Laws 1933, that it was the legislative intent to confer upon the Commissioners of the Land Office the exclusive power to appoint the attorneys for said commission, whether the same were designated as law and executive clerks or title examiners, and that this intent runs through all the enactments in an unbroken thread; that originally it was provided that the power to make

any of these appointments might be delegated by the commissioners to their secretary should they see fit so to do, but it appears that this was not done and that the latest enactment of the Legislature expressed definite intention to withdraw this power in so far as the attorneys and appraisers to the Commissioners of the Land Office were concerned. Since by the 1929 Act the Commissioners of the Land Office had authority to appoint two title examiners and two assistant title examiners, and by the 1933 Act appropriation was made for only one title examiner and two assistant examiners, it is apparent that the purpose of the proviso limiting the commissioners to the appointment of one title examiner and two assistant title examiners was to prohibit the appointment of more than three title examiners and for no other purpose. Had said proviso been omitted, the commissioner; might have appointed four title examiners as provided in the 1929 Act, although appropriation was made in chapter 184, Extra S. L. 1933, for only one title examiner and two assistant title examiners. The proviso confers no authority, either actual or apparent, upon the Secretary of the Commissioners of the Land Office, and has no reference to his powers in any way. It clearly appears that it was intended only as a further limitation upon the Commissioners of the Land Office as to the number of title examiners that it might employ and for no other purpose. Our conclusion in this respect is further strengthened by the language appearing in the last paragraph of section 2, chapter 184, supra, which provides as follows:

"The commissioners, by a majority vote, may remove the Secretary or any appraiser, or any attorney, of the Land Office, and the Secretary may discharge and remove any employee, selected by him."

By virtue of the above provision, it clearly appears that the commission was given plenary power to discharge and remove the secretary and any appraiser or attorney. The language used is definite and certain and cannot be easily misunderstood. Since the parties stipulated that the duty of the law and executive clerk was to act as an attorney for the Commissioners of the Land Office, such position is included in the phrase "any attorney" used in the act and is governed by the provisions relative thereto. Under these circumstances we think that it is evident that upon the discharge of the plaintiff on April 17, 1935, by the Commissioners of the Land Office, the plaintiff ceased to occupy any position whatsoever, and that, although he was not bodily removed from

the desk and office space which he had previously occupied and continued in the physical possession thereof at the instance and request of the Secretary of the Commissioners of the Land Office, this amounted to a mere sufferance on the part of the commissioners and did not restore any right to the plaintiff, and that any work that he may have performed at the instance of the Secretary to the Commissioners of the Land Office must be deemed to have been done and performed as a mere volunteer and as a personal favor to said officer. The plaintiff had been an attorney to the Commissioners of the Land Office for several years; he had received his appointment from the Commissioners and presumably was familiar with the law creating his position, the manner and method of appointment thereunder, and the termination of the relationship, and knew, or should have known that the Secretary to the Commissioners of the Land Office had no authority of law, either actual or apparent, to supersede the action of the Commissioners of the Land Office by attempting to reinstate or reappoint the plaintiff after his discharge and removal by the commissioners. Before one is entitled to payment out of public funds he must point to some clear statutory authority therefor. Hence, under the agreed statement of facts and the law applicable thereunder, it is apparent that the plaintiff had no authority of law on which to base his claim for salary. The State Auditor rightfully refused to allow the same and the district court erred in awarding the peremptory writ herein. See State v. Board of Commissioners of Ellis County, 65 Okla. 273, 166 P. 423. For the reasons above given, the judgment of the trial court must be reversed and the cause remanded, with directions to discharge the peremptory writ heretofore awarded and to dismiss the petition of the plaintiff.

Judgment reversed and remanded, with directions.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.