(No. 6598. December 24, 1938.)

P. C. O'MALLEY, Respondent, v. HARRY C. PARSONS, State Auditor of the State of Idaho, Appellant.

[85 Pac. (2d) 739.]

J. W. Taylor, Attorney General, and R. W. Beckwith, E. G. Elliott, L. B. Quinn and D. W. Thomas, Assistant Attorneys General, for Appellant.

Charles F. Reddoch and J. R. Smead, for Respondent.

AILSHIE, J.—Respondent was manager of the State Insurance Fund several years prior to January, 1937, and he alleges:

"That plaintiff herein was on January 25, 1937, by Hon. Barzilla W. Clark, Governor of the State of Idaho, given a temporary appointment, as Manager of State Industrial Insurance, within the Department of Finance of the State of Idaho; that he thereupon duly qualified as such, and served in said capacity under said appointment until May 18, 1937, on which date, a new certificate of appointment was issued to him by the Governor of the State of Idaho, attested by the Secretary of State, under the Great Seal, effective on said last mentioned date to January 2, 1939."

He then alleged that he discharged the duties of the office of state insurance manager for the month of May, 1937, and the first three days of June following, for which service he was entitled to receive a salary of $275, and that the payroll of the state insurance fund was duly certified by the state board of examiners to the auditor, showing respondent entitled to a warrant or warrants aggregating said sum; and that the auditor neglected and refused to issue his warrant therefor; and

respondent prayed for a writ of mandate commanding the auditor to discharge his official duty and issue such warrant.

The auditor demurred to the petition and at the same time answered, and the substance of the answer, allegations and admissions, amounts to this: That the respondent did occupy the position of manager of the State Industrial Insurance at the times and in the manner alleged but that he was not entitled to collect any salary for the reason that he was disqualified from holding the office at any time subsequent to January 1, 1935, by reason of having violated secs. 57–1015 and 57–1016, I. C. A., and thereby incurred the penalties and disqualifications prescribed by sec. 57–1017. It is further alleged by the answer that the decision rendered by this court May 25, 1937, in the case of *State ex rel. Hansen v. Parsons,* 57 Ida. 775, 69 Pac. (2d) 788, in effect adjudged respondent guilty of violating the foregoing enumerated sections of the statute and thereby, in effect, found respondent disqualified to hold office or to be employed in any manner by any state agency for a period of four years.

The case was heard by the trial court on the complaint and answer and demurrers thereto and the court found in favor of plaintiff and entered judgment directing the issuance of a permanent writ of mandate directed to appellant to issue a warrant in favor of respondent for the sum due. From the judgment so entered this appeal has been prosecuted.

Counsel for appellant seem to place their chief reliance on the decision of this court in *State ex rel. Hansen v. Parsons, supra,* and state in their brief as follows: "It is the position of the defendant that the office as Manager of the State Insurance Fund became *ipso facto* vacant and the plaintiff ineligible to hold any state office for four years from the time and happening of the event in which he exceeded his appropriations without any judicial determination whatsoever."

Counsel for appellant either misapprehend the holding of the court in the Hansen case or, apprehending it, overlook the fact that respondent was not a party to that action and that his eligibility to hold office or liability to punishment for a misdemeanor was not before the court and not the subject of decision in that case. The opinion itself in that case

stated the question to be decided distinctly and succinctly. It is there said:

"The only question with which we are confronted is: Did the legislature have the constitutional power to enact chapter 46 (House Bill No. 74), First Extraordinary Session of the Legislature of 1935?"

It was stipulated in that case that the appropriation had been exceeded by claims against it in the sum of $1402.85. (See, also, chap. 46, p. 129, 1935 Sess. Laws, First Extraordinary Sess.) After a somewhat extended analysis of the bill and discussion of its purposes and the power of the legislature to enact it, the opinion concludes: "We conclude that the act in question (chap. 46 of the 1935 Sess. Laws, 1st ex. Sess.) violates section 18, article 4 and paragraph 18, section 19, article 3 of the Constitution." On rehearing Mr. Justice Holden made the following statement in his concurring opinion:

"However, the brief filed by the friends of the court leads me to point out: That Mr. P. C. O'Malley, former manager of the State Insurance Fund, is not a party to this action; that he is not on trial in this case; that this court has not adjudged him guilty of any misconduct whatsoever, and that this court has not decided that he is ineligible to hold the office of manager of that fund."

It is clear that the decision of this court in the Hansen case was not an adjudication against respondent, nor did it become *res adjudicata* as to any of his rights. However, it is contended by the attorney general that *immediately upon the respondent creating any deficiency exceeding his appropriation*, in violation of secs. 57–1015 and 57–1016, he thereby *ipso facto* incurred the pains and penalties prescribed by sec. 57–1017, which reads as follows:

"Any person violating the provisions of the two preceding sections shall be deemed guilty of a misdemeanor, and shall be disqualified from holding any state office or from being employed by the state of Idaho or by any board of regents or board of trustees of any state institution for a period of four years from and after the commission of the offense."

The foregoing contention is then followed by citation of subd. 7 of sec. 57–901, which provides: "Every civil office

shall be vacant upon the happening of either of the following events at any time before the expiration of the term of such office, . . . . 7. A forfeiture of office as provided by any law of the state.''

Now it will be noticed that this subdivision prescribing a forfeiture does not say that the vacancy occurs automatically *on the happening of the act* but rather ''as provided by any law of the state.'' Before the penalty prescribed by sec. 57–1017, *supra,* can be invoked, or applied, to an officer, it must be judicially determined in some appropriate proceeding to which he is made a party, that he has been guilty of the offense or offenses charged. The penalty for violation of these statutes is that the officer ''shall be deemed guilty of a misdemeanor, *and* shall be disqualified from holding any state office or from being employed'' by any state agency.

An accused, whether he be a public officer or a private citizen, cannot be adjudged guilty of a crime without first being tried in accordance with the law of the land. If he is convicted under this statute (sec. 57–1017), he is then subject to the punishment prescribed for misdemeanors *and also* disqualified to hold office for the period of four years. As to whether he could be ousted from office and disqualified from further holding office without first being convicted of violating sections 57–1015 and 57–1016, and as to whether the penalty is divisible or one composite, we express no opinion as these phases of the statute are not here involved.

It is further contended by the attorney general that the salary provided to be paid to a public official is incident to the title to the office and can therefore be claimed only by a *de jure* officer and cannot be recovered by a *de facto* officer, although he occupied the office and discharged all the duties thereof during the period of time for which he claims pay.

In *Dotson v. Cassia County,* 35 Ida. 382, 385, 206 Pac. 810; this court said:

''The salary and emoluments of a public office attach to the office itself, and not to the individual discharging the duties of the office, except as he is an officer *de jure*.''

But among other things in course of consideration of the case, it was also said:

"An officer *de facto*, acting even in good faith, under a claim of right to an office, is not entitled to recover the compensation provided by law to the exclusion of the officer *de jure* (*People v. Potter*, 63 Cal. 127; *Cobb v. Hammock*, 82 Ark. 584, 102 S. W. 382; *State ex rel. Evans v. Gordon*, 245 Mo. 12, 149 S. W. 638), unless there is no adverse contestant or *de jure* officer. (*Peterson v. Benson*, 38 Utah, 286, 112 Pac. 801, Ann. Cas. 1913B, 640, 32 L. R. A., N. S., 949.)"

The territorial supreme court in *Gorman v. Commissioners of Boise County*, 1 Ida. 655, held that a *de facto* officer acting under color of right was entitled to the salary. In *State v. Otero*, 33 N. M. 310, 267 Pac. 68, the Arizona court said:

"Where there is no *de jure* officer claiming an office, a *de facto* officer, who has performed the service and paid his expenses in so doing, may recover the same from the state."

The Utah court held to the same effect in *Peterson v. Benson*, 38 Utah, 286, 112 Pac. 801, Ann. Cas. 1913B, 640, 32 L. R. A., N. S., 949. See, also, to same effect, *Naylor v. Carter*, 167 Okl. 125, 27 Pac. (2d) 843, 93 A. L. R. 254.

So we find that an exception to the general rule has been often recognized, to the effect that a *de facto* officer, who in good faith discharges the duties of an office while there is no other claimant to such office and in fact *no de jure officer*, may collect the salary and emoluments of the office. (*Elledge v. Wharton*, 89 S. C. 113, 71 S. E. 657; *Uhr v. Brown*, (Tex. Civ. App.) 191 S. W. 379; *State ex rel. Elliott v. Kelly*, 154 Wis. 482, 143 N. W. 153; *State ex rel. Kleinsteuber v. Kotecki*, 155 Wis. 66, 144 N. W. 200; *Drach v. Leckenby*, 64 Colo. 546, 172 Pac. 424, L. R. A. 1918F, 576; *Erwin v. Jersey City*, 60 N. J. L. 141, 37 Atl. 732, 64 Am. St. 584.)

Here it is admitted that O'Malley had been the duly qualified and acting official and that he continued as such until the date on which he contracted an obligation or charge as manager of the Insurance Fund in excess of the appropriation made by the legislature therefor; and that he thereafter continued (unlawfuly, it is claimed) to hold the office, notwithstanding his alleged forfeiture of the office by his act

creating the deficiency claim. It further appears that the Governor, who has the appointive power, reappointed respondent to the same office, after the creation of the deficiency; and that, in so far as the Chief Executive was concerned, respondent was both the *de jure* and *de facto* official. (*State ex rel. Elliott v. Kelly, supra; State ex rel. Kleinsteuber v. Kotecki, supra; Erwin v. Jersey City, supra; Naylor v. Carter, supra; Cousins v. City of Manchester,* 67 N. H. 229, 38 Atl. 724.) At any rate there was never at any time any other claimant to the office. In such circumstances the officer may be paid without any very critical determination as to whether he has been a *de jure* or a *de facto* official.

What has been said in reference to respondent's eligibility or ineligibility to continue in office and discharge the duties thereof, in effect disposes of appellant's alleged cause of action for recovery of the money paid to respondent as salary since the creation of the deficiency and beginning of the alleged ineligibility to hold the office.

The judgment should be affirmed and it is so ordered. No costs awarded.

Holden, C. J., and Budge and Givens, JJ., concur.

MORGAN, J., Dissenting.—With the part of the foregoing opinion which points out that the decision in *State ex rel. Hansen v. Parsons,* 57 Ida. 775, 69 Pac. (2d) 788, did not adjudge O'Malley guilty of violating I. C. A., sections 57–1015 and 57–1016, nor adjudicate his rights or liabilities, I am in accord.

As I understand the opinion it holds O'Malley is entitled to his salary because he has not been convicted of a violation of said sections, or otherwise adjudged to have violated them. That conclusion does violence to sec. 57–1017, which, for convenience, is repeated:

"Any person violating the provisions of the two preceding sections shall be deemed guilty of a misdemeanor, and shall be disqualified from holding any state office or from being employed by the state of Idaho or by any board of regents or board of trustees of any state institution for a period of four years from and after the commission of the offense."

The law does not say a violator of sections 57–1015 and 57–1016 shall be deemed guilty of a misdemeanor *and on conviction thereof* shall be disqualified from holding any state office. It clearly makes the disqualification to hold office dependent on the violation of the statute, not on the adjudication that it has been violated, and causes the period of disqualification to hold office to commence and to run "from and after the commission of the offense," not from and after the conviction thereof.

I am of the opinion that if O'Malley violated sections 57–1015 and 57–1016 he was, thereupon and thereafter, disqualified to hold a state office and to receive the emoluments thereof for a period of four years next following the violation, and that the facts may be shown in a civil action commenced by him or by or on behalf of the state.

While the judgment in *State ex rel. Hansen v. Parsons* was not an adjudication against O'Malley, enough appears therein to justify the withholding of a warrant for his salary unless and until his right to receive it is judicially established.