COUSINS *v.* MANCHESTER.

A *de facto* officer, performing the duties of the office without objection, is entitled to compensation in the absence of any rightful claimant of the office.

---

\* See foot-note on page 80.

ASSUMPSIT, for compensation as a fireman. Facts agreed. In February, 1890, the plaintiff was appointed a fireman by the board of mayor and aldermen of Manchester, upon the written presentation of the board of fire engineers, as provided by the ordinances of the city, and served as such in good faith during the year next ensuing, without objection by the defendant. At the time of his appointment he was a member of the common council of the city.

*Burnham, Brown & Warren*, for the plaintiff.

*Edwin F. Jones*, for the defendants.

*Per Curiam.** Whether the board of mayor and aldermen of Manchester could legally appoint the firemen upon the presentation or nomination of the board of fire engineers, need not be decided. See G. L., c. 106, s. 13; *Attorney-General* v. *Lowell, ante,* p. 198. If they were authorized to exercise that power, it is claimed that the plaintiff's title is defective because it is provided, in s. 2, c. 48, Gen. Laws, that "no person shall be elected by the city councils, or appointed by the mayor and aldermen, to any office of profit, who at the time of such election or appointment is a member of the board of aldermen or common council." But whatever defect there may be in his appointment, he was a fireman *de facto* (*Jewell* v. *Gilbert*, 64 N. H. 13), and the defendants have had the benefit of his services as such.

If a city ordinance had enacted that carpenters and bricklayers employed in the construction of the buildings of the fire department should be appointed by the mayor and aldermen on the written presentation of the fire engineers, and an official character had been given to their employment by the legislative power of the city and state; and the plaintiff, being a bricklayer and a member of the common council, had been formally presented to and appointed by the mayor and aldermen to the office of bricklayer in the construction of buildings of the fire department, and in that capacity had laid brick for a year,—could the city receive the benefits of his labor and withhold his wages because he and all other inhabitants of the city happened to be ignorant of that flaw in his official title, until it was accidentally discovered after the work was done? On what legal ground can the bricklayer's case be taken out of the operation of the rule adopted in *Britton* v. *Turner*, 6 N. H. 481, and the rule of all the books, that when municipal or other corporations, or unincorporated persons, whose business is managed by an agent, receive money hired, materials bought, or the benefit of labor performed, they cannot keep the benefit received, and refuse to pay for it on account of a legal

---

* See foot-note on page 80.

defect in the proceedings? Under what exception to that rule can the bricklayer be deprived of his wages? He has held the office *de facto* and performed its duties. How can the service of such an officer be distinguished, so far as his right to payment therefor is concerned, from the same service rendered by a workman holding no office?

It is said of a merely *de facto* officer, suing for compensation, that he can rely on nothing but his official title, and that a defective title is no title; that though his acts are valid as to third persons, he cannot acquire rights based on his defective title (Dill. Mun. Corp., s. 235, n., Mechem, Pub. Off., ss. 331, 332, 333); that he puts in issue his title to the office, and must stand or fall by the finding thereon (*Matthews* v. *Copiah County*, 53 Miss. 715); that his position is like that of one who takes possession of land claiming the title which is in another. *Mayfield* v. *Moore*, 53 Ill. 428. These reasons apply when the plaintiff holds an office knowing that he is a usurper, and that the office belongs to another who claims it, as in *Meehan* v. *Hudson County*, 46 N. J. Law 276, where the plaintiff, with full knowledge that the office belonged to one in possession, forcibly ejected him and kept him out, until the plaintiff, as a trespasser and usurper, was removed by a legal judgment.

*Mayfield* v. *Moore*, *supra*, was assumpsit for money had and received for fees received by the defendant;—and it was held that as the action was an equitable one, the plaintiff, being entitled to money received by the defendant which in equity and good conscience belonged to the plaintiff, could recover as on a bill in equity for an account; that the defendant should account for the fees and emoluments of the office received by him after deducting reasonable expenses in earning them; and that a different rule would have been applied if he had intruded without pretence of legal right.

In *McCue* v. *Wapello County*, 56 Iowa 698, it was said,—"The case of a *de facto* officer is not unlike that of one in possession of land without right or title. He must account to the person holding the title for the rents and profits." In that case the *de facto* officer was in law the deputy of the officer *de jure*, and might be entitled to compensation as such from the latter. But there is no similarity between the official whose office is not claimed by any other person, and the occupant of land under a disputed title. Accounting for rents and profits to the land-owner in the case of a disputed land title, would be wholly unlike Manchester's keeping the wages earned by the plaintiff, when those wages were claimed by no other person. There is no sound distinction between service rendered by an official layer of bricks and an official extinguisher of fires. The latter is as equitably entitled to his wages as if all the property protected by him from fire had belonged to the city. Whatever defect there was in his official

title, his service as fireman does not come within any exception to the doctrine of *Britton* v. *Turner.*

*Judgment for the plaintiff.*

CHASE, J., did not sit: the others concurred.

