## THE QUEEN *vs.* JOHN COSTA and ANNA COSTA.

QUESTION RESERVED.

HEARING, NOVEMBER 29, 1892.    DECISION, DECEMBER, 23, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.

A vote of want of confidence in the Cabinet was passed by the Legislature on the 1st November, 1892. The Cabinet tendered their resignations to the Queen on the same day, but continued to attend to the duties of their offices until the 8th of November, when their successors were appointed. On the said 1st of November the Attorney-General, one of said Cabinet, before the passage of the said vote of want of confidence, commissioned a deputy for the Circuit Court of the Third Judicial Circuit, who presented to said Court on the 7th November an indictment against the defendants. On a motion to quash,

Held, the Attorney-General was not removed, or his resignation made complete by acceptance, until his successor was appointed on the 8th November. Therefore the acts of his deputy on the 7th were valid.

Motion to quash overruled.

OPINION OF THE COURT, BY JUDD, C.J.

The defendants were indicted for the crime of murder on the 7th November last before the Circuit Court of the Third Judicial Circuit. The following motion to quash the indictment was made, and the question thereby raised was reserved to the Full Court by Presiding Justice Dole:

MOTION TO QUASH INDICTMENT.

And now come the said defendants, John Costa and Anna Costa, in their own proper persons, and move the Court here that the indictment presented against them this day in the above entitled cause be quashed, and in support of said motion said defendants allege the following facts, viz:

1st. That said indictment is not signed or presented by an Attorney-General of the Kingdom duly, legally and constitutionally appointed to and holding office at the date of the signing of the same and its presentment against these defendants.

2d. That at the time when said indictment was signed and presented by W. Austin Whiting, Esquire, as and for the deputy of Charles Creighton, Esquire, therein described as the Attorney-General of the Kingdom, he, the said Charles Creighton, was not the Attorney-General of the Kingdom, and was not constitutionally holding the said office of Attorney-General, or constitutionally or legally discharging its duties and functions.

3d. That at the date of his said signature to and presentation of said indictment, as and for such deputy as aforesaid, he, the said W. Austin Whiting, was not the deputy legally and constitutionally appointed, and holding place and office as such deputy of the Attorney-General of the Kingdom.

4th. That the finding of a true bill against these defendants upon such indictment, so, as aforesaid, unsigned by and not presented by the Attorney-General of the Kingdom, or by the deputy of such Attorney-General, constitutionally and legally holding office as such at the time of such signing and presentation, was and is irregular, invalid and void.

This motion is based upon the records and files herein, upon the commission under which said W. Austin Whiting purports and purported to act as and to be the deputy of the Attorney-General of the Kingdom in this behalf, upon the affidavit of C. W. Ashford hereto annexed and made a part hereof, and upon events which have occurred in regard to Her Majesty's Cabinet since noon on the first day of November, instant, of which the Court here is respectfully asked to take judicial notice.

---

The essential facts, as appear by the affidavits filed, are as follows:

On the 1st day of November, 1892, Her Majesty appointed and commissioned a Cabinet in which Mr. Chas. Creighton was Attorney-General. At 11:30 A. M. of that day Mr. Creighton

commissioned W. Austin Whiting as his deputy for the Third Judicial Circuit, and Mr. Whiting proceeded by steamer at 2:30 o'clock in the afternoon of that day to the island of Hawaii, where the November Term of the Circuit Court of the Third Judicial Circuit was to be holden in pursuance of the statute. At about 12:30 P. M. of the said 1st of November, the Legislature passed a resolution of want of confidence in the said Cabinet. Whereupon the Cabinet, through their head, Mr. W. H. Cornwell, tendered their resignations to the Queen. The affidavit of Mr. Creighton is to the effect that their resignations were not accepted by the Queen until the 8th of November, when their successors were appointed, and Mr. Creighton says he continued to perform the duties of Attorney-General until that date.

The indictment in question was signed "Charles Creighton, Attorney-General, by his deputy, W. Austin Whiting."

Mr. C. W. Ashford, counsel for the defendants, contended that the passage by the Legislature of a resolution of want of confidence in a Cabinet, more especially when followed by resignation of the Cabinet, terminated their official career, and a request by the Queen to the Cabinet to hold their offices until their successors were appointed had no greater effect than commissions *ad interim* would have had. Commissions of this character were held by this Court in *Regina vs. H. F. Poor*, 8 Hawn., 521, to be, under the present Constitution, invalid. Acceptance of the resignation is not essential to its completeness. Mr. Creighton reassumed the duties of his office, whereas no new commission was issued to him. Consequently his appointment of Mr. Whiting as his deputy was invalid.

Attorney-General Brown *per contra*.

### By the Court.

The Constitution (Article 41) prescribes that the Cabinet "shall be appointed and commissioned by the King, and shall be removed by him only upon a vote of want of confidence passed by a majority of all the elective members of the Legislature," etc.

We held in *Regina vs. H. F. Poor* that as the tenure of office of

a Cabinet Minister was no longer at the pleasure of the sovereign, but was subject to the vote of the Legislature, the Queen could not legally appoint ministers *ad interim,* for such an appointment would infer that the tenure was at the sovereign's pleasure. This case, therefore, has no bearing upon the present issue. We consider that the sound and sensible view of this Article of the Constitution is that whenever a vote of want of confidence in a Cabinet is passed by the Legislature, it is incumbent upon the sovereign to make new appointments of ministers. Now if the sovereign can *only,* in the event of a resolution of want of confidence or conviction of felony, remove the Cabinet, the plain intendment is that when such contingencies arise she *must* remove them and appoint their successors. Having found this to be her duty, a formal resignation by the Cabinet is unessential. She was free to appoint a new Cabinet as soon as notified of the passage of the resolution, whether her ministers had tendered their resignations or not. In the case before us the Cabinet's resignations were promptly tendered on the 1st November and new appointments were made on the 8th. It is undoubtedly good law that an acceptance of a resignation may be manifested by acts of those authorized to receive it, as by appointing a successor. *Van Orsdall vs. Hagard,* 3 Hill, 243.

We have no Article in the Constitution nor Statute that provides that a Cabinet officer shall continue to hold office until his successor is appointed. According to the common law in England a person elected to a municipal office was obliged to accept it and perform its duties, and he subjected himself to a penalty by refusal. *Edwards vs. United States,* 103 U. S., 473. In the above case the Supreme Court of the United States, per Mr. Justice Bradley, say: "As civil officers are appointed for the purpose of exercising the functions and carrying on the operations of government, and maintaining public order, a political organization would seem to be imperfect which should allow the depositaries of its power to throw off their responsibilities at their own pleasure." "An office was regarded as a burden which the appointee was bound, in the interest of the community and of good government, to bear. And from this it

followed, of course, that after an office was conferred and assumed, it could not be laid down without the consent of the appointing power. This was required in order that the public interest might suffer no inconvenience for the want of public servants to execute the laws." The authorities cited are numerous. See *id.*, p. 474. This learned Court goes on to say: "In this country, where offices of honor and emolument are commonly more eagerly sought after than shunned, a contrary doctrine with regard to such offices, and in some States with regard to offices in general, may have obtained, but we must assume that the common law rule prevails, unless the contrary be shown."

The common law doctrine is held in *Hoke vs. Henderson*, 4 Dev. (N. C.,) L. 1 ; in *Van Orsdall vs. Hagard*, 3 Hill, 243 ; and in *State vs. Ferguson*, 31 N. J. L., 107, that an acceptance is essential to the completion of a resignation.

We do not go to the extent of holding that in this Kingdom a resignation of a public officer may not be finally effectual, though it be not accepted by the appointing power. Such an event would rarely happen. But in the case before us we have held it to be the Sovereign's duty to make new appointments. This should be done reasonably soon. There should be no hiatus in the four most important executive offices of the Government. Public business, the interests of the entire community, require that the routine of government be carried on. There are stated terms of court prescribed by law at which accused persons must be presented for trial or the interests of justice would suffer. The wheels of government should not stop or anarchy would result.

It is most reasonable to hold that the Cabinet must continue to hold office after a vote of want of confidence until their successors are appointed. The good of the people require it, and we find it necessary, and the wisdom of such a rule sustained by principle and authority. The question how long a Cabinet, in such a position, may continue to conduct the business of their offices, the Sovereign not making new appointments, we do not find it necessary to discuss further than to state our opinion

that they are obliged to remain a reasonable time. The appointment of the new Cabinet on the 8th November, they having resigned, can be considered as an acceptance of the resignations of the former Cabinet, or, if the resignations are treated as unnecessary, the new appointments were a removal of the former incumbents. In either view the official life of the former Cabinet did not cease until the 8th November, when their successors were appointed and assumed office. The fact that Mr. Creighton continued to attend to the duties of his office until his successor was appointed goes to show that he did not consider his resignation as then terminating his official appointment.

We therefore hold that the authority of Mr. Whiting to act as the deputy of the Attorney-General continued good until the successor of the Attorney-General was appointed, and his act in signing and presenting the indictment was valid.

We overrule the motion to quash the indictment.

*Attorney-General Brown*, for the Crown.

*C. W. Ashford*, for the defendants.