TERRITORY OF HAWAII, BY ITS ATTORNEY
GENERAL, EDWARD N. SYLVA
*v.* JAMES M. MORITA,

TERRITORY OF HAWAII, BY ITS ATTORNEY
GENERAL, EDWARD N. SYLVA
*v.* ARTHUR Y. AKINAKA,

TERRITORY OF HAWAII, BY ITS ATTORNEY
GENERAL, EDWARD N. SYLVA
*v.* DR. THOMAS M. MOSSMAN.

NO. 3027.

ARGUED MARCH 3, 1955.          DECIDED MARCH 12, 1955.

TOWSE, C. J., STAINBACK AND RICE, JJ.

OPINION OF THE COURT BY STAINBACK, J.

Separate quo warranto proceedings were instituted by the Territory of Hawaii through its attorney general on January 14, 1955, against James M. Morita, on January 17, 1955, against Arthur Y. Akinaka and Dr. Thomas M. Mossman to try title of Morita to the office of city and county attorney, title of Akinaka to the office of superintendent of buildings, and title of Dr. Mossman to the office of city and county physician.

Inasmuch as the three cases involve the same point of law they were consolidated below for hearing and decision and are before this court in such form.

The substance of the several petitions is that the several respondents were duly appointed and confirmed to their respective offices on January 2, 1953, for the term of two years by the then Mayor, John H. Wilson, and the then board of supervisors consisting of M. D. Beamer, Mitsuyuki Kido, Matsuo Takabuki, Noble K. Kauhane,

Nicholas T. Teves, Samuel K. Apoliona, Jr., and John M. Asing; that the terms of John H. Wilson as mayor and the above named supervisors expired on January 3, 1955; that Neal S. Blaisdell was duly elected to the office of mayor and Samuel K. Apoliona, Jr., Mitsuo Fujishige, Noble K. Kauhane, Mitsuyuki Kido, Herman G. P. Lemke, Matsuo Takabuki and Richard Kageyama as supervisors of the City and County of Honolulu for a term commencing January 3, 1955, and duly qualified and took office on said date; that the offices of city attorney, superintendent of buildings, and city and county physician are not included within the civil service nor is there any specific provision in the laws of the Territory of Hawaii contrary to the provisions in the laws of the Territory of Hawaii prohibiting the extension of the term of office of the respective respondents beyond the term of his appointing and approving powers; that the terms of the several respondents expired at twelve o'clock meridian on January 3, 1955, and since said twelve o'clock meridian on January 3, 1955, the several respondents have usurped, intruded into and held, and do now unlawfully usurp and hold their respective offices as above set forth and have unlawfully exercised and do now unlawfully exercise the powers and functions of the said offices without authority of law.

All of the allegations in the petition were admitted by respondents save and except as to the illegality of the respondents exercising the functions of the several offices, appellants claiming that their tenures of office had not terminated; that they had the legal right and duty to hold over until their various successors were appointed, confirmed and qualified; that they had a moral duty to remain in office until they were duly succeeded, and that they were required to remain in office by resolution number 916 of the former mayor and board of supervisors and were holding over to insure continuity of the municipal adminis-

4

tration and in the public interest, convenience and welfare in the absence of duly appointed, confirmed and qualified successors.

In addition to the stipulations of fact filed herein admitting the allegations in the petition, respondents offered certain testimony showing that Mayor Blaisdell on the day he took office submitted to the board of supervisors for approval the appointments of one Takashi Kitaoka as city and county attorney, one Yoshio Kunimoto as superintendent of buildings, and one Dr. David I. Katsuki as city and county physician; that on the same day the board by motion duly made and seconded "laid the appointments on the table"; that since such date the board has neither accepted nor rejected said appointments nor taken any further action thereon.

There was testimony of the mayor that if the appointments were rejected by the board he was prepared to make new appointments and submit the names of such appointees to the board for approval, and to do so again if such new appointments were rejected.

Six members of the board of supervisors each testified that he would not take any action on the appointments submitted by the mayor until these quo warranto proceedings had been finally determined and that he would resist any efforts which might be made by any person not approved by the board to take over the powers, duties and functions of the offices to which appointments might be made; and five of the six testified they considered the respondents to be properly in office.

Evidence was also given as to the scope and magnitude of the duties and functions of the respective offices and the volume of the pending business in the departments.

The trial court held that the respondents had no legal title to office, that they have held office without lawful authority since the expiration of their respective terms

at noon on January 3, 1955, and that the respondents had failed to justify their continuing in office; that "If judgments of ouster are entered against respondents in these actions, there will be an interruption of performance of duties and functions of the City and County Attorney, Superintendent of Buildings and City and County Physician until the performace of such duties and functions is undertaken by an appointee of the Mayor to said offices or such an appointee approved by the Board, and that such interruption need not necessarily continue for such period of time as to cause any substantial damage or prejudice to the municipal government, the Mayor and Board having the power and duty to fill said offices." In accordance with its decision the court entered a judgment of ouster against the three respondents but stayed execution pending appeals to this court provided the appeals were diligently taken and prosecuted.

The principal, if not the only, question involved in these appeals is whether appellants have the right to hold over in the offices after the expiration of their statutory terms until their successors are appointed, confirmed and qualified.

Appellants contend that the limitation of the terms of appointive officers of the City and County does not preclude holdovers; that it limits the "terms" of the offices as distinguished from the "tenure"; and that such officers have a right and duty to remain until their successors are duly appointed, confirmed and qualified. They further contend that should the question be decided against appellants, there is an additional question of whether the court should not refuse to oust appellants for reasons of public interest and welfare until such officials are lawfully succeeded.

The cases have been well and carefully briefed and excellently argued by counsel on both sides.

The section of the law pertinent to the appointment and term of office of the respondents is section 6575, Revised Laws of Hawaii 1945, which reads in part as follows: "It shall be the duty of the mayor, *on or immediately following the day from which his term of office begins,* to appoint, with the approval of the board of supervisors, all appointive department heads of the city and county, created or recognized by law or ordinance whose terms have expired, and all other officials whose appointments are not otherwise provided for and whose offices or positions are vacant. The term of office of those so appointed shall not, unless otherwise specifically so provided, or unless they are included in the civil service under any law then in *effect, extend over the term of office of such appointive and approval power.* * * *" (Emphasis added.)

Counsel for appellants claims that the general doctrine of American decisions which in substance holds that "in the absence of express provision and unless the legislative intent to the contrary is manifest, municipal officers hold over until their successors are provided" applies. (3 McQuillin, *Municipal Corporations,* § 12.110, pp. 400, 401.)

The question is: What is the proper interpretation of section 6575, Revised Laws of Hawaii 1945, regarding the term or tenure of office of officers attempting to hold over after the term of the appointing and approval power has expired?

In the interpretation of statutes it has been said that the legislative intent is the guiding star in the interpretation thereof or, as often said, the intent of the legislature constitutes the law. Thus, the primary rule of construction is to ascertain the intent of the legislature and carry this intent into effect to the fullest degree. (50 Am. Jur., Statutes, § 223. pp. 201, 202.)

Statutes are open to construction only where the

language used in the statute requires interpretation; that is, where it is ambiguous. Rules of interpretation are resorted to for the purpose of resolving an ambiguity and not for creating one. However, use may be made by the courts of aids to the construction of the meaning of the words in the statute even though on superficial examination the meaning of the words seems clear. Ambiguity may arise other than from fault of expression. Ambiguity is not simply that arising from the meaning of the particular words, but may arise in respect to the general meaning of a statute when all of its provisions are examined. Uncertainty as to the meaning of a statute may arise from the fact that giving a literal interpretation to the words would lead to an unreasonable, unjust, impractical or absurd consequence.

While the most desirable construction of a statute is that which is consistent with both the spirit and the letter thereof, frequently the purpose of the act justifies a departure from the literal construction of the wording. Courts have often used the expression that "a thing which is within the intention of the statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers." (*Chang v. Meagher et als.*, 40 Haw. 96.)

Though the meaning of the words in section 6575 seems reasonably clear, counsel for appellants have made a forceful argument that there is no express prohibition against municipal officers with a definite term of office holding over until their successors are provided, that there is a distinction between "tenure" and "term," and that these officers come within the rule of holding over until their successors are appointed and qualified.

We must, therefore, look to the intent of the legislature, giving particular emphasis to the evils which were sought

to be cured when the amendment to the statute was made. "In construing a statute, the court must look to the object to be accomplished, the evils and mischiefs to be remedied, and place on it a reasonable construction that will best effect its purpose." (*Re Sprinkle & Chow Liquor License,* 40 Haw. 485, 490-491.)

Section 6575, Revised Laws of Hawaii 1945, originally was section 1704, Revised Laws of Hawaii 1915, and provided as follows: "Power of appointment. The mayor, with the approval of the board of supervisors, shall appoint and may remove all heads of departments, now or hereafter created or recognized by law or ordinance, except elected officials, and all other officials whose appointment is not otherwise provided for. When a vacancy occurs in any elective office or in case of any department head or other official as aforesaid and provision is not otherwise made in this chapter, or by law, for filling the same, the Mayor, with such approval, shall appoint a suitable person to fill such vacancy, who shall hold office for the remainder of the unexpired term unless otherwise removed."

On January 2, 1924, a few hours before the expiration of their terms of office, the outgoing mayor and board of supervisors appointed and approved one Louis Cain as city and county engineer for the City and County of Honolulu. The ordinance under which he was appointed provided that the mayor, with the approval of the board of supervisors, shall appoint and may remove at pleasure a suitable person as engineer of the City and County of Honolulu. The newly elected incoming mayor after he took office neither removed Cain nor appointed a successor. Thereupon, a majority of the board of supervisors instituted a quo warranto proceeding to test the engineer's right to office, contending that his term had expired with the expiration of the terms of the outgoing mayor and board who had appointed and approved him. The case came

before this court and it was held that Cain was a *de jure* officer, there being no statute to preclude him from holding over after the expiration of the appointing and approving powers terminated. (*Ahia* v. *Cain*, 27 Haw. 770.) In discussing the words "term" and "tenure," (which were used synonymously), the court said: "The ordinance is silent as to tenure. The result is that it is at the will of the appointing power." Again: "There is no express provision in the statutes or ordinances defining the length of the term of office of the city and county engineer. * * * the only reasonable inference is that it was the intention of the lawmakers that an engineer duly appointed should continue in office until removed or until the due appointment of a successor even though that should extend his tenure of office into the term of a succeeding mayor or board."

When the legislature first convened after this decision was rendered, section 1704 of the Revised Laws of Hawaii 1915, which had become section 1788 of the Revised Laws of Hawaii 1925, was amended by inserting therein, among others, the words "* * * The term of office of officers so appointed shall not extend over the term of office of such appointive and approval power. * * *" (S. L. H. 1925, Act 57.)

This amendment was obviously made to prevent city and county officials from holding over as did Louis Cain in 1924. The report of both the senate and house committees of the legislature are very clear upon this point. The senate committee on April 16, 1925, reported: "The purpose of the bill is to amend the law giving the Mayor the right by and with the approval of the board of supervisors so that the term of office of officers *shall not extend over the term of office of such appointive and approval power.* Your Committee, after due and careful consideration, recommends the passage of the bill." The house

committee, among other things, stated: "This Bill seeks to make for more harmonious government in the City and County of Honolulu, in that it *automatically legislates out of office all appointees made by the retiring administration*, and leaves the incoming administration free to fill all appointive offices with persons who are in accord with its proposed policies. Your Committee believes this to be constructive legislation and therefore recommends that the Bill do pass." (Emphasis added.)

That committee reports may be considered where there is doubt as to the proper meaning of a statute is well settled. (50 Am. Jur., Statutes, § 334, pp. 325, 326.).

Very obviously, if the statute is given the interpretation sought by the appellants the situation would be exactly the same in the present case as it was in the case of Louis Cain. In that case the mayor kept in office holdovers by refusing to make new appointments; in this case the supervisors are keeping in office holdovers by refusing to confirm, reject or in any way act upon the new appointees. Under the construction of the statute claimed by the respondents the amendatory act would be completely nugatory and the clearly expressed purpose of the legislature to cure the evils of the *Cain* decision would fail of accomplishment.

While it may be of some significance as showing an intent to keep the then appointees in office, one of the last acts of the outgoing board and mayor was to pass a resolution requesting that these officials continue in office, yet this resolution is without force and effect as it is inconsistent with and tends to defeat the intent and object of the territorial statute dealing with the subject matter. (R. L. H. 1945, § 6521, paragraph 48.)

The intention of the legislature to legislate out of office all appointees made by the retiring administration is further shown by the fact that in amending section

1788, Revised Laws of Hawaii, 1925, after the *Ahia* v. *Cain* decision, the initial language of the section was changed so as to put a duty upon the incoming mayor and board of supervisors to fill vacancies immediately upon taking office. Prior to this amendment the language of that section was: "The mayor, with the approval of the board of supervisors, shall appoint * * *." (Section 1788, Revised Laws of Hawaii 1925.) By the amendment this language was changed to read: "It shall be the duty of the Mayor, on or immediately following the day from which his term of office begins, to appoint, with the approval of the Board of Supervisors * * *." (Revised Laws of Hawaii 1925, section 1788, as amended by Act 57, Session Laws of Hawaii 1925.)

Respondent-appellant Morita further claims that the prohibition against continuing in office beyond the terms of the appointing and approving powers does not apply to the office of city and county attorney because at the time such prohibition was enacted the office of city and county attorney was elective. It will be noted, however, that the statute containing the prohibition was in effect at the time the office of city and county attorney was changed from an elective to an appointive office. The statute read as follows: "It shall be the duty of the Mayor, on or immediately following the day from which his term of office begins, to appoint, with the approval of the Board of Supervisors, all appointive heads of the City and County of Honolulu, *now or hereafter created or recognized by law or ordinance* — except elected officials — and all other officials whose appointments are not otherwise provided for, *the term of office of officers so appointed shall not extend over the term of office of such appointive and approval power.* * * *" (Emphasis added.) (Session Laws of Hawaii 1925, Act 57.) Further, it appears that since the office of city and county attorney was made

appointive the sections relating to the appointment of the city and county attorney and to the limitation of the term of appointive officers have been twice reenacted (in the Revised Laws of 1935 and 1945) together with the term limitations provisions.

The decisions from other jurisdictions relative to statutory construction may have little effect upon the interpretation of the statutes of Hawaii, which clearly govern the present proceedings, yet the case of *State ex rel Crow, Atty Gen* v. *Lund*, 107 Mo. 228, is very persuasive. In that case there was a section of a charter which provided that certain appointive officers should hold their offices for the term of two years; there were other provisions as to elective officers, as is the present situation in Hawaii. The following language was used by the court in that case: "* * * if the terms of the appointive officers do not expire at the expiration of two years from the time of their appointments, why is it that the charter does not provide that they shall hold over until their successors are appointed and qualified, as it does with respect to elective officers? It is too plain for argument that the object indicated was the intention of the framers of the charter; otherwise they would have made the same provision with respect to both classes of officers. It therefore seems obvious that the framers of the charter purposely omitted any provision that the appointive officers should continue to hold over until their successors should be appointed and qualified, and that they intended that those offices should be immediately filled by the mayor upon the expiration of their terms."

In the case before us the same question can be asked. Why did not the legislature provide that the appointive officers shall hold over until their successors are appointed and qualified, as it did with respect to the elective officers?

Respondent-appellants have in their opening brief

cited a number of Hawaiian cases, namely, *Queen* v. *Costa,*
8 Haw. 552, *Canario* v. *Serrao,* 11 Haw. 22, *Territory* v.
*Mattoon,* 21 Haw. 672, *Wilder* v. *Colburn,* 21 Haw. 701,
and *Chinese Society* v. *Yap,* 24 Haw. 377, to the effect that
an officer "should hold over his term of office until his
successor is properly selected and qualified even though
in the absence of statutory authority to do so."

A reading of the cases cited discloses that not one of
such cases involves a quo warranto proceeding by the
government against one claiming office but are collateral
attacks upon the acts of *de facto* officials.

For example, in the case of *Territory* v. *Mattoon,* a
portion of the syllabus states: "Officers — *de facto officer*
— *collateral attack on authority of officer de facto.* A
public officer who wrongfully but in good faith holds over
and continues to exercise the functions of an office after
the term for which he was elected or appointed has elapsed,
there being no *de jure* incumbent, is a *de facto* officer, and
his title or authority cannot be collaterally questioned in
proceedings to which he is not a party or which were not
instituted to determine their validity."

A more recent case dealng with collateral attack upon
the acts of *de facto* official is *In Re Application of Sherretz,*
40 Haw. 366, which holds that the acts of a *de facto* official
(who holds over after his term has expired) are valid as
far as the rights of third persons are concerned and are not
subject to collateral attack.

The language of section 6575, Revised Laws of Hawaii
1945, and the history of the amendments thereto show
beyond question that the legal term of office of the re-
spondents expired with the terms of the mayor and board
who appointed and approved them. Even assuming that
the statute does not absolutely preclude tenure beyond
the expiration of the term, such tenure does not constitute

14

a legal right to office and the officials are at most *de facto* officers.

While the authority or title of a *de facto* officer cannot be collaterally attacked, such *de facto* status is not a defense against a quo warranto proceeding instituted by the soverign authority. To prevail in quo warranto proceedings the respondents must show that they have a legal right to the office and are *de jure* officers. (*Commonwealth* v. *Allen,* 128 Mass. 308; 53 Am. St. Rep. 583, and cases cited therein.)

"A proceeding in the nature of quo warranto to determine respondent's title to an office requires him to show that he is a de jure officer, and it is not sufficient for him to show that he is holding over under circumstances which would be sufficient to render his acts good as to the public and third persons, when his title was not directly called in question." (*State ex rel. Eberle* v. *Clark,* 89 Atl. 172.) See also: *State ex rel Crow* v. *Lund, supra; State of Florida* v. *Gleason, supra; Hale* v. *State ex rel Algee,* 237 Ala. 191; *Lymer* v. *Kumalae,* 29 Haw. 392, 395; *People ex rel Lafferty* v. *Owen,* 286 Ill. 638; *Alcorn, State's Atty. ex rel Hoerle* v. *Thomas,* 127 Conn. 426.

The further argument is made by respondents that the trial court has a discretion as to entering judgment of ouster against persons having no legal title to the office and that there was an abuse of discretion by the trial judge.

A history of the writ of quo warranto shows that the ancient writ of quo warranto has been obsolete even in England, there being substituted therefor information in the nature of quo warranto. The ancient doctrine was that the usurpation of public office was a public wrong and that the remedy was a public one to be sought only in the name of a sovereign. It was criminal in nature and the usurper was fined as well as ousted. However, this rule

has been relaxed by statute and the proceeding is civil in nature. Our statute impliedly permits private parties to be parties to such a proceeding when an interest is shown. (*In re Sherwood,* 22 Haw. 385.)

While there are certain authorities that hold the courts have discretion to refuse judgment of ouster in a quo warranto proceeding, these authorities are mostly cases where the suit is brought at the instance of a private relator to try title to public office or is brought to challenge the existence or exercise of a corporation franchise; but the courts unless there is a statutory provision to the contrary hold that where the proceeding is instituted by the attorney general in behalf of the state the only discretion conferred upon the courts is to determine whether the petition meets the requirements of the law. Such was the common-law rule and we do not believe that our territorial statute has modified it.

"The pursuit of the remedy by information in *quo warranto* is not ordinarily a matter of right but one resting in the sound discretion of the court, and in England since the statute of Anne and in many of the United States it can only be filed, on the relation of a *private individual,* by leave of the court first had and obtained. In some of the States, however, such leave is not required. *It may be filed by the State, in its sovereign capacity, by its attorney-general, without leave.*" (Emphasis added.) (Mechem, *Public Officers,* § 484, pp. 312, 313.)

Again, as stated in *Florida* v. *Gleason,* 12 Fla. 190, 213: " * * * The power of determining whether the action shall be commenced, must exist somewhere. As we have seen, it has sometimes been vested in the court and sometimes in the public prosecutor. Our legislature has not seen fit to make any change in the common law rule. The office of the Attorney-General is a public trust. It is a legal presumption that he will do his duty, that he will act

with strict impartiality. In this confidence he has been endowed with a large discretion, not only in cases like this, but in other matters of public concern. The exercise of such discretion is in its nature a judicial act, from which there is no appeal, and over which the courts have no control." There are many authorities to the same effect.

Finally, if there is a discretion in the trial judge, respondents' evidence fails to disclose that there was an abuse of such discretion.

The mayor and the board of supervisors can fill such vacancies forthwith. In fact, under the statute it is their duty to do so and the presumption is that they will perform this duty.

The respondents are at most *de facto* officials and the authorities uniformly hold that a *de facto* status is no defense against quo warranto proceedings instituted by the soverign itself — in this case the Territory of Hawaii by its attorney general.

Judgment sustained.

*M. Watanabe* and *Y. Fukushima* (also on the brief) for respondents-appellants.

*C. R. Ashford,* Deputy Attorney General (*E. N. Sylva,* Attorney General, with him on the brief), for petitioner-appellee.

### DISSENTING OPINION OF TOWSE, C. J.

I respectfully dissent.

The factual situation presented on these appeals is as recited in the majority opinion. The quo warranto proceedings seek ouster of the appellants upon the grounds that they unlawfully claim and unlawfully usurp their respective offices, and that at the time of institution of each proceeding, and at present, are and continue to unlawfully perform and discharge the duties and functions

of their respective offices. Forthwith ouster is sought as to each.

In correlation to this and of paramount import, is the fact that it is conceded and admitted that an irreconcilable impasse exists and will continue to exist between the designated appointive authorities the resolving of which cannot be made the subject of conjecture. That the impasse had its inception in and continues to be conceived, premised and controlled upon political realities is, I consider, totally immaterial to the determination of the sole issue presented in the appeals. Also warranting paramount emphasis, is the further fact that it is conceded and admitted that the two-year appointive terms of office of each of the appellants have and did expire by operation of law on the third day of January, 1955.

Determination of what I deem to be the sole issue presented is premised upon interpretation of section 6575, Revised Laws of Hawaii 1945. That issue, concisely stated is: Whether, in an irreconcilable impasse between the appointive authorities such as is disclosed by the records on appeal, an appointed department head whose *term of office* has expired under the provisions of section 6575, Revised Laws of Hawaii 1945 is lawfully authorized, or should, under applicable provisions of law, continue his *tenure of office* and as such public officer continue to lawfully discharge the public duties and functions of such office *until such time* as his successor is appointed, confirmed and qualified according to law by said appointive authorities; or, in the alternative:

Whether the legislature, in enacting section 6575, Revised Laws of Hawaii 1945, in an effort to remedy and preclude the recurrence of situations as disclosed in the case of *Ahia* v. *Cain*, 27 Haw. 770, by expressly mandating it to be the *duty* of the mayor to appoint with the approval of the board of supervisors all appointive department

heads whose *terms have expired* and further expressly limiting the *term of office* of those so appointed to the *term of office* of the mayor and board of supervisors, contemplated and intended that vacancies in such appointive offices be condoned and allowed to exist in *irreconcilable* impasses such as here presented thereby necessitating the intervention of the attorney general of the Territory into every such irreconcilable impasse in order to enable and permit the orderly continuity of municipal functions.

Section 6575, Revised Laws of Hawaii 1945, provides in part:

*"Power to appoint, remove and suspend.* It shall be the *duty* of the mayor, on or immediately following the day from which his *term of office* begins, to appoint, with the approval of the board of supervisors, all appointive department heads of the city and county, created or recognized by law or ordinance *whose terms have expired,* and all other officials whose appointments are not otherwise provided for and whose offices or positions are vacant. The *term of office* of those so appointed shall not, unless *otherwise specifically so provided,* or unless they are included in the civil service under any law then in effect, extend over the *term of office* of such appointive and approval power * * *."* (Underscoring added.)

In the absence of express statutory prohibitions precluding a lawful tenure of office extending beyond the *duration* of a designated term of office, invocation of the applicable common-law doctrine, which doctrine becomes operative under settled precedents in this jurisdiction to situations such as here presented, is mandated. That principle of law is:

*"Holding over; no successor.* Declining to adhere to the strict ancient English rule that, without express provisions therefor in the charter, the mayor or other chief officer could not hold over until his successor was

appointed; the American courts early adopted the doctrine that, in the absence of express provision and unless the legislative intent to the contrary is manifest, municipal officers hold over until their successors are provided * * *." (3 McQuillin, *Mun. Corp.*, 400-401, § 12.110; see also 67 C. J. S., *Officers*, § 48 [a], 202; 43 Am. Jur., *Public Officers*, § 162, 20; 22 R. C. L., *Public Officers*, § 257, 555; Mechem on *Public Officers*, § 397, 257; 50 L. R. A. [n. s.] 365 n; 29 Cyc. 1399.)

The principles of law established by that doctrine have been consistently recognized and adhered to in this jurisdiction in the following cases: *Queen* v. *Costa*, 8 Haw. 552; *Canairo* v. *Serrao*, 11 Haw. 22; *Territory* v. *Mattoon*, 21 Haw. 672; *Wilder* v. *Colburn*, 21 Haw. 701; *Chinese Society* v. *Yap*, 24 Haw. 377.

Moreover, statutory silence upon the subject of *extended tenures* of appointed municipal officials when such *tenure* is otherwise expressly authorized by statute for *elected* officials, does not constitute a similar legislative prohibition by inference or otherwise against *extended tenures* of *appointed* officers. (*State* v. *Johnson*, 135 Wash. 109, 237 Pac. 12; *State* v. *Daggett*, 28 Wash. 1, 68 Pac. 340; *People* v. *Oulton*, 28 Cal. 44; *Hartford Indemnity Co.* v. *Tulare*, 30 Cal. 2nd 832, 186 Pac. [2d] 121; *State* v. *Johnson*, 176 Wis. 107, 186 N. W. 729; *Robinson* v. *United States*, 42 Court of Claims 52.)

"* * * The conclusion thus reached is, in accordance with the general principle of law, well established, that, in the absence of any *restrictive* provision of statute, municipal officers hold over *until* their successors are elected and qualified. Tied. Mun. Corp. Sec. 81; People v. Oulton, 28 Cal. 45.

"Such conclusion is likewise in harmony with the policy of the law, which is to have some one, *at all times*, in a public office to discharge the duties thereof, and, in a

doubtful case, such policy will greatly influence the interpretation of the law fixing the tenure of office. 'The law abhors vacancies in public offices, and great precautions are taken to guard against their occurrence.'" (*State* v. *Swan,* 16 Utah 483, 52 Pac. 1092; underscoring added.)

Section 6575, Revised Laws of Hawaii 1945, contains no express or implied prohibition against an *extended tenure* in office of an appointive officer whose *term of office* has expired. The section was enacted to remedy the so-called "Cain situation," and to prevent recurrence of circumstances such as there presented. Its language, however, when construed in the light of *Ahia* v. *Cain,* 27 Haw. 770, as well as the specific mischief which it was designed to prevent, declares only that the *terms of office* of appointive officers which are *not otherwise specifically fixed as to duration,* shall not extend over, but shall be coterminous with the *term of office* of the appointing administration in order to enable an incoming administration to appoint officers of its own choosing. (H. R. Rep. No. 453 and Sen. Rep. No. 50 on H. B. No. 200, Reg. Sess. [1925].) The section neither declares that such offices become vacant, nor does it prohibit a continued tenure in office after expiration of the two-year term of office.

The express limitation upon an appointive officer's *term of office* does not, as a matter of law, prohibit his continued tenure, or prevent his lawful discharge of the powers and duties of the office *after* the expiration of his term of appointment. The limitation is directed at and applies only to the *term of office as such.* It connotes no susceptible interpretation intended either to prohibit or terminate an extended *tenure of office* in situations such as presented by the instant appeals. Tenure encompasses the *total period of time of lawful* holding of an office. A tenure may be of longer duration than that of

a specific term of office, and may, by its very definition transpire *after a term of office has expired*. Upon the expiration of the appointive *terms of office* of the appellants on January 3, 1955, which termination is admitted by all parties to these proceedings, the respective appellants' lawful extended tenures commenced; and, in my opinion will lawfully continue until such time as their respective successors are duly appointed, confirmed and qualified according to law. Section 6575, Revised Laws of Hawaii 1945, was designed, and its legislative history so proclaims, that its intent and purpose is to prevent a *term of office* from extending into succeeding administrations. I cannot agree, in the light of that specifically declared intent, that it is amenable to a construction in the present impasse to prohibit or preclude extended *tenures in office* by these appellants, when such continuity has become imperative in order to avoid interim vacancies between two *terms of office*.

Statutory language intended to prohibit or preclude the salutary application of the *extended-tenure* doctrine must be manifestly and clearly expressed. (*State* v. *Daggett*, 28 Wash. 1, 68 Pac. 340.) I find no such prohibition or suggestion thereof contained in the wording of section 6575, Revised Laws of Hawaii 1945, even remotely warranting the ouster of the appellants upon the grounds asserted below by the appellee. The appellee contends that the section effects an automatic ouster of the appellants since there is no distinction between a "term of office" and a "tenure of office"; and argues that the termination of the former absorbs, dissolves and terminates the latter. With this interpretation I do not concur.

Ample precedent recognizes their interpretative distinctions and lawfully operative effects.

"Tenure in office means the right to perform the duties and to receive the emoluments thereof. *It is not*

*synonymous with the phrase 'term of office' * * *."* (3 McQuillin, *Mun. Corp.* 393, § 12.108; underscoring added.)

"Term of Office. Since the term of an office is distinct from the tenure of an officer, 'the term of office' *is not affected by the holding over of an incumbent beyond the expiration of the term for which he was appointed; and a holding over does not change the length of the term, but merely shortens the term of his successor."* (67 C. J. S. 206, *Officers,* § 48, 206; underscoring added.)

" 'The *term of an office* relates to the office, and not to the incumbent,' Harrold v. Barnum, 8 Cal. App. 21, 25, 96 P. 104, 105. It is there not to be confused with the *tenure of office* and it is not affected by the *holding over of an incumbent beyond the expiration of the term.* In a term of office there may be several tenures, but the *term of the office remains the same."* (*Holbrook* v. *Board of Directors,* 8 Cal. [2d] 158, 64 P. [2d] 430; underscoring added.)

"* * * The provision of Section 14, article 16, that an officer shall continue in office after the expiration of his official term until a successor is qualified, is intended to prevent a hiatus State, ex rel. v. Murphy (In re Com'rs of Duval County), 32 Fla. 138, 161, 13 So. 705; In re Advisory Opinion, 65 Fla. 434, 62 So. 363, 50 L. R. A. (N. S.) 365; 22 R. C. L. 550, and does not affect the cycle of the term fixed by law which ends at the expiration of the statutory term periodically whether the incumbent or another is the successor; otherwise the organic limitation as to terms may be violated by an officer holding over for a length of time after his term has expired and then being commissioned for a full term from the date of the commission and not from the end of the previous term as the Constitution contemplates." (*State* v. *Amos,* 101 Fla. 114, 133 So. 623, 625.)

The distinction between "term" and "tenure" is, in

my opinion, further mandated and intended by certain of our Revised Laws themselves. Section 6528, Revised Laws of Hawaii 1945, specifically authorizes that the city attorney and public prosecutor be appointed for a *term of two years;* whereas section 6529, Revised Laws of Hawaii 1945 (entitled: "Tenure of Office"), provides that all elective officers shall hold office for a *term of two years and until their successors are duly qualified.* Other statutory provisions authorizing an officer to *continue in office* for a fixed period and *until properly succeeded* are entitled "'tenure of office" (see R. L. H. 1945, §§ 6207, 6314; Organic Act, § 80).

I conceive the term "tenure" as employed in our statutes to include and mean a fixed period of years *plus* such extended time of *continued tenure* beyond the expiration of the fixed term as is or may become *necessary* or *required* by the appointive authority to discharge their vested duty of selecting, appointing and confirming a successor according to law. A public officer lawfully discharging his duties and functions under an extended tenure of office following the expiration of his term of office possesses, in my opinion, sufficient title to such office to sustain his lawful acts where, as in these appeals, no lawfully appointed and confirmed successor is now or was at the inception of the quo warranto proceedings, appointed and confirmed according to law to succeed the officer sought to be ousted.

Writs of quo warranto issued in these proceedings were directed against the appellants to inquire by what authority they claimed and usurped their respective offices (R. L. H. 1945, § 10279); the findings below concluding that the appellants had in fact usurped their offices and continued in such offices unlawfully. (R. L. H. 1945, § 10284.) Judgments premised upon those findings were entered but execution stayed.

"* * * In cases, however, where there is no de jure officer, the line of decisions last mentioned hold that a de facto officer who, in good faith, has had possession of the office and has discharged the duties pertaining thereto, is *legally entitled to the emoluments of the office and may,* in an appropriate action, recover the salary, fees, and other compensation attached to the office. This doctrine is discussed and illustrated in the following cases: Erwin v. Jersey City, supra; Dickerson v. City of Butler, 27 Mo. App. 9; Behan v. Board, etc. 3 Ariz. 399, 31 Pac. 521; Adams v. Directors, etc. 4 Ariz. 327, 40 Pac. 185.

"* * * the rule should be different when there is *no such officer in existence. * * *."* (*Peterson v. Benson,* 38 Utah 286, 112 Pac. 801; underscoring added.)

Additional precedent recognizing the foregoing doctrine are: *Elledge v. Wharton,* 89 S. C. 113, 71 S. E. 657; *State v. Kelly,* 154 Wis. 482, 143 N. W. 153; *State v. Otero,* 33 N. Mex. 310, 267 Pac. 68; *Franks v. Ponca City,* 170 Okl. 134, 38 P. (2d) 912; *State v. Gordon,* 245 Mo. 12, 149 S. W. 638; *Cousins v. Manchester,* 67 N. H. 229, 38 Atl. 724; *O'Malley v. Parson,* 59 Idaho 635, 85 P. (2d) 739.

The following precedents sustain the established rule that a public officer *continuing in office* after the expiration of his *term of office* may maintain a valid and complete defense to quo warranto proceedings where, as here, there is no lawful successor due to the inability or failure of the duly constituted appointive authorities to appoint and confirm such successor; and where also, as here, no statute or other restriction prohibits such *extended tenure.* In such circumstances, proof of "de jure" title to such office is not required. (*State v. Stratton,* 28 Cal. 382; *Commonwealth v. Kelley,* 322 Pa. 178, 185 Atl. 307; *State v. Christensen,* 84 Utah 185, 35 P. [2d] 435; *Caskin v. Jones,* 198 S. C. 508, 18 S. E. [2d] 454; *Forristal*

v. *People*, 3 Ill. App. 470; *Kreidler* v. *State*, 24 Ohio St. 22.)

The foregoing is consonant with the doctrine applicable to *extended tenures* such as here presented, in that, while a de facto status is ordinarily vulnerable to attack by quo warranto inquiry, ouster, on the other hand will be denied where its operative effect would create a vacancy in public office. (*State* v. *Hoff*, 88 Tex. 297, 31 S. W. 290.)

The sole and manifest purpose of the "de facto" doctrine is to preserve and protect the public interest. "* * * The purpose of the doctrine of de facto officers is the continuity of governmental service and the protection of the public in dealing with such officers, not to protect them from displacement by de jure successors. 43 Am. Jur. 224, 225, Public Officers, sec. 470." (*Bradford* v. *Byrnes*, 221 S. C. 255, 70 S. E. [2d] 228.) Where as here, an irreconcilable impasse exists, and no de jure successors are prepared to replace or displace de facto officers such as the appellants herein, I deem the orderly continuity of municipal functions and services to be paramount, and warranting preservation by application of the de facto officer doctrine. "There would seem to be no distinction in this respect between a *holding over under express authority* and a *holding over without it;* the holding over is in each instance of the *same nature,* and the effect and consequences would seem to be the same * * *." (*Benson* v. *Mellor*, 152 Md. 481, 137 Atl. 294; underscoring added.)

The controlling public policy which in my opinion attaches to circumstances such as here presented, has heretofore been stated by this Court in *Jones* v. *Pa*, 34 Haw. 12, 17, 18, which not only recognizes the distinction between a *term and tenure of office* but also declares that policy to be:

"Vacancies in public office are contrary to the proper and efficient administration of business. They should

not be permitted to exist longer than the discharge of a governmental *authority of appointment reasonably requires*. Moreover the law abhors vacancies. (*State* v. *Lutz,* 147 So. [Ala.] 429, 432; *Board of Trustees* v. *Kercheval,* 45 S. W. [2d] 846, 847.) And it is the policy of the law to fill vacancies as soon as possible after the vacancy occurs. (*State* v. *Board of Commissioners,* 145 N. W. [S. D.] 548, 549.)" (Underscoring added.) (See also 67 C. J. S., *Officers,* § 50, 207; *State ex rel Rogers* v. *Johnson,* 135 Wash. 109, 113, 237 Pac. 12, 13.)

The lower court's findings of fact conclude that if judgments of ouster were forthwith executed against the appellants there would be an interruption in the performance of the duties and functions of the offices of the respective appellants until those offices are assumed by appointees appointed, confirmed and qualified according to law, but "that such interruption need not necessarily continue for such period of time as to cause any substantial damage or prejudice to the municipal government, the mayor and board having the power and duty to fill said offices." Apparently premised upon this finding, the execution of the judgments of ouster were ordered stayed (their execution being governed by other applicable statutory provisions).

I conceive those findings and the stay of execution of the judgments of ouster to be premised upon the hypothesis and presumption that the appointing authority, possessing the undisputed power and duty to appoint and confirm appointees to the offices in question would immediately do so, and that the hiatus created by an ouster would not be of such duration or magnitude as to inflict substantial damage or prejudice to the municipality. On the contrary, the record discloses otherwise. The testimony of the witnesses as well as the stipulations of the parties conclusively disclose in my opinion, that the uninterrupted

functioning of each of the departments concerned is essential and necessary to the good administration of the municipal government. All parties concurred and the lower court judicially noted that each of the public offices now held by the appellants is essential to the proper administration of the city government. That a hiatus in the functioning of each of said departments would ensue if execution of the judgments of ouster were not stayed is, in my opinion, a conclusion not warranted by the evidence. No hiatus *need* develop nor continue, *if* the appointing authorities act seasonably to resolve the existing impasse. The lower court's finding is conjectural. Manifestly, then, public necessity and good jointly dictate that these appellants remain in their respective offices and continue to discharge their lawful duties and functions *until* such time as they are succeeded by the affirmative doings of the appointive authorities in appointing and confirming their successors according to law.

"The law abhors vacancies in public offices, and courts generally indulge in a strong presumption against a legislative intent to create, by statute, a condition which may result in an executive or administrative office becoming, for any period of time, wholly vacant and unoccupied by one lawfully authorized to excercise its functions." (67 C. J. S., *Officers*, § 50, 207; see also *State ex rel Rogers* v. *Johnson,* 135 Wash. 109, 113, 237 Pac. 12, 13.)

The basis of the common law "extended tenure" rule heretofore quoted is that government cannot properly function without its necessary officers, and is recognized and applied in this jurisdiction. "Public business, the interest of the entire community, require that the routine of government be carried on * * *. The wheels of government should not stop or anarchy would result * * *." (*Queen* v. *Costa,* 8 Haw. 552, 556.)

"In this appeal it does not become the duty of this court to suggest remedies which must be invoked by the institution of other proceedings; nor can the court now undertake to adjudicate and determine matters in controversy between the executive and legislative departments of the municipality * * *." (*Robb* v. *Carter*, 65 Md. 321, 4 Atl. 282.)

In situations presenting irreconcilable impasses similar to those here presented, the rule is adopted that courts traditionally maintain a position of aloofness and indifference to political impasses, stalemates and disputes arising in other branches of government and are hesitant to enforce their judgments in a manner which would either directly or indirectly contravene or invade the prerogatives of other branches of government by creating vacancies in derogation of the public interest in impasses such as here presented. "* * * *The trouble lies in the fact that the other commissioners refuse to confirm appellant's appointees, and the charter fails to provide any remedy for the deadlock thus caused.* * * * There is, of course, a probability that the remainder of the commissioners will be more apt to confirm appointments if no one is discharging the duties of the office than if some one is discharging the same; * * * if any wrongful motives actuate the other commissioners in refusing to confirm his appointees, the same cannot be charged up to the men serving in the department." (*Uhr* v. *Brown* [Tex. Civ. App.] 191 S. W. 379, 383-384; underscoring added.)

This Court in *Ahia* v. *Cain*, 27 Haw. 770, expressed similar sentiment in the circumstances then before it, although those facts did not parallel the factual situation now presented. "The presumption and the theory of the law are, of course, that in selecting and appointing and in removing a city and county engineer the appointing officers *are moved merely by the best interests* of the City

and County and are not moved by what are ordinarily called political considerations. If it so happens that in any given instance a mayor or a board or both are moved by political considerations and by reason thereof *are unable to agree upon an appointment* or a removal, *that, however regrettable, cannot affect the construction of the law.* Whether the law in this respect ought to be amended is a matter that concerns the legislative authorities and not the courts." (*Ahia* v. *Cain,* 27 Haw. 770, 779; underscoring added.)

In order to preserve inviolate the duty and discretion vested in the appointive authorities here concerned, the determination of the issue presented should, in my judgment, be premised exclusively upon the governing principle of the *Ahia* case quoted *supra,* and be controlled solely by consideration of the fact that:

"* * * the writ in this case is invoked, not in the interest of any private person, but *in the interests of the public, and for public purposes.* We should therefore exercise or refuse to exercise our power over the writ and proceedings in such manner *as shall best promote the public interests * * * They are officers de facto, and the public interests require that they should not be disturbed."* (*People* v. *Gartland,* 75 Mich. 143, 42 N. W. 687, 688; underscoring added.)

It is contended that indefinite or even permanent "extended tenure" in office by the appellants would result from denial of the writs of ouster sought by the appellee. Such an eventuality is furthest from the practical evaluation of the circumstances presented when viewed in the political realities presented by the record. The impasse may be resolved and terminated momentarily by a reconsideration of the adamant positions now assumed by the appointive authorities in the exercise of the duty and discretion vested in and incumbent upon them; or,

should the impasse continue over such protracted period of time as to actually disrupt or prejudice the orderly continuance and functions of municipal affairs other appropriate steps to compel the exercise of those vested powers and duties of appointment and confirmation of successors to the appellants herein could be undertaken. Failure of the foregoing could presumably give rise to other appropriate remedial measure directed against the appointive officials responsible grounded upon nonfeasance in their respective offices. The expedient remedy of the writs sought herein may be proper and swift in situations warranting their issuance and execution; and while alternative measures may not be so speedily determinable, they nevertheless must be sought in circumstances where the office of the writ is not sustainable.

I conceive the foregoing to constitute a preferable evaluation in every respect to the intervention of the attorney general of the Territory in these or future situations of a similar nature in every such impasse as has here developed or which may develop in similar circumstances in the future. This conclusion is readily forthcoming in the conceivable view of the position in which the office of the attorney general of the Territory would be relegated if forced to intervene and assume and direct the public duties, functions and responsibilities of the office and department of the city and county physician or the office and department of the building superintendent of the City and County of Honolulu, which roles he concededly is not equipped to perform with the same degree of proficiency as was so ably displayed in the recent intervention wherein that office took over and assumed the ad interim duties and functions of the office of public prosecutor of the City and County of Honolulu.

The enactment of section 6575, Revised Laws of Hawaii 1945, was dictated by the decision of this Court,

in the *Ahia* case, *supra,* and was intended to prevent a repetition of the circumstances which developed in necessitating that the situation in that case be resolved by enacting the section. I do not concur in now interpreting the section as a remedy to resolve the present irreconcilable impasse. This Court cannot legislate the relief sought. Such relief as is necessary may be sought in the Twenty-eighth Session of the Legislature.